## Sennett, Appellant, *v.* Insurance Company of North America, Appellant.

Argued, January 8, 1968. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Robert M. Taylor,* Special Assistant Attorney General, with him *Joseph H. Resnick,* Assistant Attorney General, and *William C. Sennett,* Attorney General, for Commonwealth.

*Augustus S. Ballard,* with him *David R. Scott, Alfred W. Cortese, Jr., Barrett Godwin Tawresey, Robert B. Ely, III,* and *Pepper, Hamilton & Scheetz,* for defendant.

OPINION BY MR. JUSTICE COHEN, November 12, 1968:

This proceeding was initiated by petition of the Attorney General of Pennsylvania (Commonwealth) seeking to compel the Insurance Company of North America[1] (INA) to pay certain allegedly escheatable

---

[1] Certain of INA's subsidiaries also were named as respondents, but the parties entered into stipulations whereby INA assumed responsibility for all.

items of personal property held by it into the State Treasury.[2] Although originally the petition referred to eleven different classes of personalty, the present appeals involve only three: (1) uncollected wages, (2) proceeds of uncashed checks and drafts and (3) so-called "deposits" on perpetual fire insurance policies.

The lower court upheld the Commonwealth with respect to certain unpaid wages held by INA ($550.48), gave permission to the Commonwealth to inspect relevant books and records of INA dealing with all three items and otherwise denied the petition. However, in denying the petition the lower court refused to uphold INA's contention that the "deposits" on perpetual fire insurance policies belonged to INA subject to the right of the insured to obtain a refund upon fulfilling certain requirements—i.e., demonstrating that the single payment really constituted a premium. Instead, it held INA to the latter's own characterization of the fund as a deposit belonging to the insured and held by INA for the insured. On the other hand, since the Commonwealth showed no right in the various insureds to recover these funds, the Commonwealth's claim was denied.

Both parties appealed, the Commonwealth from the denial of its claim and INA "primarily"[3] from the

---

[2] Although the pleadings are not clear, both parties and the lower court treated the case as one seeking payment into the State Treasury without escheat pursuant to the Act of April 9, 1929, P. L. 343, §1310, 72 P.S. §1310; and we shall so regard it.

[3] In its brief INA states it appears here as an appellant "primarily" because the court below "refused to rule that the consideration paid for perpetual fire insurance policies in the form of a 'deposit' belongs to INA unless and until the insured fulfills all of the requirements for a refund as set forth in the policy." However, apart from the order of the lower court directing INA to pay over $550.48 to the Commonwealth (a direction apparently not questioned by INA), no final adverse order was entered against INA. Therefore, it is open to serious question whether INA is an

aforesaid holding of the court below with regard to the nature of the "deposit." Their contentions will be reviewed in connection with the subsequent discussion of each issue, and since the problem of the "deposit" money is the most controversial, we shall discuss that issue first.

Since 1841 INA has written and sold about 35,000 policies of perpetual fire insurance. Under this type of policy the insured, by making a single payment to the insurer, secures insurance coverage for an indefinite period. If he cancels the policy, he is entitled to a refund of a substantial portion of the payment; if the insurer cancels the policy, it must refund the full amount.

If the covered property is sold, however, the policy is not automatically transferred or transferable. It may be transferred to the new owner within 30 days of the sale only with INA's approval. If INA does not approve, it must return the deposit money. If no request for a transfer is made, the policy contains a provision under the heading "cancellation by assured" which provision lies at the crux of the present controversy. It provides in pertinent part as follows:

". . . in case of sale of the property insured, if the deposit-money be not demanded within (30, 60, 90) days after the sale, it shall be considered as sunk for the benefit of the Company. . . ."

As can be readily understood, where an insured makes a single payment at the inception of the insured-insurer relationship and thereafter has no rea-

---

aggrieved party entitled to appeal. It may, in fact, be requesting an advisory opinion on an issue which may be argued in the future before our Court if the Commonwealth's investigation bears fruit. However, as argumentative matter on the merits of the Commonwealth's appeal, what INA presents is proper; and in order to avoid further question on this point, we shall entertain the argument of INA in such posture.

.

son to contact the insurer unless a loss occurs, problems of continued ownership will almost certainly arise unless the insured is exceptionally diligent about reading the fine print. In this case, for example, INA investigated about 2300 of its older perpetual policies on which it had received deposits aggregating approximately $80,000 and found: (1) about 830 of the covered properties had been transferred in some way, (2) about 20 of the covered properties had been destroyed or removed, and (3) 1,450 of the covered properties were owned by policyholders with whom INA had had no communication for a long period of time. INA thereupon transferred the $80,000 in deposit-money from its "reserved or unearned premiums" account to "surplus", but, subsequently, upon advice of counsel transferred to reserves an amount representing the deposits on the third group of properties mentioned. In no case involving these 2300 policies had a claim been made within seven years, and in all cases the whereabouts of the potential claimants were unknown for more than seven years.

We can dispose of the deposit-moneys with respect to the 1450 policies in the third category with no difficulty. These sums are still held as reserves by INA. There is no showing that the insured property owner has acquired any right to claim anything or that INA is entitled to the funds in question, since nothing has happened necessitating either a refund claim by the owner under the policy or a sinking by INA. Absent a showing that the owner is entitled to the money, the Commonwealth cannot claim it under the pertinent escheat statute. Act of May 2, 1889, P. L. 66, §3, as amended, 27 P.S. §333. Nor can INA appropriate the funds, thus its restoration of the deposit-moneys to its reserves was clearly necessary and proper.

With respect to the deposit-moneys for the 850 policies which were and remain sunk for the benefit of INA, the situation is somewhat different. Here, INA has appropriated the funds and the Commonwealth attacks this action on the ground that, (1) no proof of sale of the properties was shown and/or (2) assuming arguendo, a sale, the sinking clause is unenforceable. The record before us warrants the finding of fact that no sale has been demonstrated with respect to any of these policies. INA's investigation established the transfer of 830 covered properties and the destruction of 20 others, but it did not establish the circumstances under which such transfer or destruction occurred. Since we cannot ascertain from the record a finding that even one of the properties was actually sold, and since INA's claim under the sinking clause arises only if there has been a sale, we cannot determine if any insured has a claim for refund which has passed to the Commonwealth under the appropriate escheat statute.

On the other hand, of course, INA had no more right to appropriate these deposit moneys than it did those paid on the previously discussed 1450 policies, and consequently, INA should have returned the former to reserves as well. However, nothing precludes the Commonwealth from now making an investigation if it chooses to do so, and if it establishes that INA actually has transferred to its surplus deposit-moneys paid for perpetual fire insurance on properties which actually were sold and with respect to which no claims for return of the deposit-moneys were made within the policy period (30, 60 or 90 days) by the insured, and if more than seven years has elapsed, the Commonwealth may make its claim and renew its attack on the sinking clause.

INA also contends that in any event the Commonwealth would be barred from commencing escheat pro-

ceedings to recover the funds, since the fifteen year statute of limitations has expired. The Act of July 10, 1963, P. L. 233, 27 P.S. §601, provides as follows:

"No action for escheat, or for payment into the State Treasury without escheat, shall be commenced or maintained unless such action has been, or is commenced, within fifteen years after the property sought in such action shall first have escheated, become escheatable or payable into the State Treasury without escheat under any act of the General Assembly."

We read this statute as an attempt by the legislature to provide a definitive end to the possibility of escheat proceedings after fifteen years have passed. However, we cannot reason that the Commonwealth is precluded under this provision where it lacks the knowledge that certain property has become escheatable. Here, INA never filed a report with the Commonwealth concerning the deposit-moneys; yet it contends the Commonwealth is barred by operation of the fifteen year limit set forth in the above statute.

The lower court in upholding INA's contention, reasoned that since the sinking clause was valid, INA actually had no moneys due and owing to policyholders and had no obligations to undertake any expensive investigation to determine whether, in fact, even under its own view of this clause, it held any funds subject to refund. We disagree. If INA is correct with regard to the sinking clause (a matter we do not now determine), it would be entitled to retain the deposit-moneys. However, the correctness of its position on this substantive issue cannot be used to bar the Commonwealth's action when the Commonwealth had no report from INA on the question. INA simply has to take its stand: if it reports the holding of these funds (as a precautionary measure), the statute will run; if it does not, the Commonwealth is not precluded there-

after from initiating an action even if the fifteen year period has expired.

Finally, INA raises a second limitations issue. It points to certain items (such as uncollected wages, uncashed checks, etc.) which the rightful owner would be barred to collect after six years, (Act of March 27, 1713, 1 Sm. L. 76, §1, 12 P.S. §31), and concludes that the Commonwealth's rights can rise no higher than the individual claimant's. In this connection INA argues that in three other escheat statutes the legislature specifically has removed the statute of limitations as a bar, Act of June 7, 1915, P. L. 878, §15, 27 P.S. §261, Act of June 25, 1937, P. L. 2063, §13, 27 P.S. §446, Act of May 11, 1949, P. L. 1140, §13, 27 P.S. §473; while no such provision appears in the statute involved here. Act of May 2, 1889, P. L. 66, §3, as amended, 27 P.S. §333.

The effect of INA's argument would be to preclude the Commonwealth entirely with regard to matters involving a private six year statute of limitations because the Commonwealth's right to bring escheat proceedings only arises seven years after the claimant's right ripens. We cannot adopt such an absurd result. See Statutory Construction Act of May 28, 1937, P. L. 1019, §52, 46 P.S. §552. While the Commonwealth's claim as to the substantive merits of its position may very well be derivative, the procedural requirements of a statute of limitations which apply to the claimant, nevertheless do not prevent the Commonwealth from enforcing its separate and distinct right to bring escheat proceedings. Only a specific statutory limitation can operate as a bar against the Commonwealth. This we now have in the fifteen year statute of 1963 noted above. Therefore, the Commonwealth is not barred from commencing escheat proceedings on this ground.

The order of the court below granted the Commonwealth the right to inspect INA's books and records to determine what sums are due and owing. It denied the Commonwealth's petition with respect to deposit-moneys and other items, subject to the Commonwealth's right to request reconsideration after completion of its investigation. Finally, it directed payment to the Commonwealth of the previously mentioned $550.48, representing unpaid wages. As to the latter item, we affirm. As to the remainder of the order, we vacate all aspects except that part granting to the Commonwealth the right to inspect INA's books and records. We suggest that upon application to it by the Commonwealth, the lower court modify its time restriction in view of the burden upon the Commonwealth to investigate the facts regarding the various properties.

The matter is remanded to the court below for further proceedings consistent with this opinion.

Mr. Justice JONES dissents.

Mr. Justice MUSMANNO did not participate in the decision of this case.

---

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

I would affirm the Order of the lower Court.

The Act of July 10, 1963, P. L. 233, 27 P.S. §601, provides as follows:

"No action for escheat, or for payment into the State Treasury without escheat, shall be commenced or maintained *unless* such action has been, or is commenced, *within fifteen years after the property* sought in such action *shall* first have escheated, *become escheatable\* or* payable into the State Treasury *without escheat* under any act of the General Assembly."

---

\* Italics, ours.

The majority Opinion states: "We read this statute as an attempt by the legislature to provide a *definitive end to the possibility of escheat* proceedings after fifteen years have passed. However, we cannot reason that the Commonwealth is precluded under this provision where it lacks the knowledge that certain property has become escheatable."

The first sentence accurately states the clear intent of the Legislature, as well as the law. The next sentence in the majority Opinion—the sentence upon which the Majority bases two of its important holdings and conclusions—*flies in the teeth of the clear language of the Act.*

I disagree with the holding with respect to the deposit-moneys for the 850 policies which were sunk for the benefit of INA and the destruction of 20 other properties. In the first place, the Commonwealth had the burden of proof which it is clear it did not sustain, and secondly and more importantly, the aforesaid Statute of Limitations undoubtedly bars the Commonwealth's claim.

For these reasons, I dissent.