[No. 50499–7.  En Banc.  January 11, 1985.]

THE DEPARTMENT OF REVENUE, *Appellant,* v. PUGET SOUND POWER AND LIGHT COMPANY, *Respondent.*

Kenneth O. Eikenberry, Attorney General, and James R. Tuttle, Assistant, for appellant.

Perkins, Coie, Stone, Olsen & Williams, by John H. Binns, Jr., and Michael T. Reynvaan, for respondent.

UTTER, J.—The State Department of Revenue appeals a decision by the trial court denying the Department's claim to abandoned utility deposits held by Puget Sound Power and Light Company. Puget appeals the trial court's decision requiring it to deliver abandoned dividends to the Department. The trial court held that Puget was entitled to abandoned utility deposits because the statute of limitations had run against the owners and therefore against the Department as well. The court also held that the Department was entitled to the abandoned dividends since Puget held the dividends as a trustee and the statute of limitations had not run against either the owners or the Department. We affirm the trial court's holding as to both issues.

The primary issue with regard to abandoned utility deposits is whether Puget may keep the deposits since it never filed a report notifying the Department that the

deposits were abandoned and never informed the Department prior to this suit that it believed the statute of limitations had run against the owners and the Department. The Department claims that Puget's failure to file an abandoned property report and its failure to assert the statute of limitations defense in the report precludes it from doing so now. Puget argues that filing the report would have been a meaningless act since the Department's rights were the same as the owners and the statute of limitations had run against the owners.

From 1955 to 1979 Puget received deposits from its customers to secure their utility payments. The receiving, holding and return of deposits was governed by Washington Utilities and Transportation Commission Rules, WAC 480-100-051 *et seq.*, and General Rules and Provisions, Schedule 80 (tariffs). The WAC's, since 1965, have required that the deposits accrue interest. The tariffs filed by Puget pursuant to regulation provide that the deposits are placed in Puget's general account and become general corporate funds, and that the utility may transfer the deposits from one account to another when deemed necessary. The deposits are applied to the customers' current balances, if any, upon termination of service, and the remainder is refunded to the customers by check.

The procedure for canceling overage drawn checks required that if Puget was unsuccessful at locating the payee, the check was "appropriated," *i.e.,* canceled. The amount was credited to income, debiting the liability account, resulting in an increase in cash as company income. Between 1967 and 1979 Puget received $87,579.08 from this procedure. There is no information about the amount received from 1955 to 1966, although the Department projected $53,330.53 for that period. Puget has from time to time honored stale or lost deposit refund checks.

The only factual issue in dispute at the trial was the amount Puget appropriated between 1955 and 1967. The parties stipulated to the remaining facts. The trial court

504

held that from 1955 through 1979 RCW 63.28,[1] the Uniform Disposition of Unclaimed Property Act (UPA), governed the deposits; that under the UPA the deposits were presumed abandoned after 7 years; that since the Department's rights were cut off at the same time as the owners, after 6 years, Puget's failure to report the property abandoned did not violate the UPA nor did it toll the running of the statute of limitations. Further, Puget's occasional honoring of stale checks did not prohibit it from raising the statute of limitations defense against the Department at the trial.

RCW 63.28.100 provided that utility deposits were presumed abandoned 7 years after termination of service. RCW 63.28.170 required holders of property presumed abandoned to report to the Department with respect to that property. RCW 63.28.190 required delivery of the reported property to the Department after the Department published notice and time for retrieval by the owner had passed. The parties agreed that the 6–year statute of limitations based on a written contract applied to the refund checks.

I

Although Puget did not expressly plead the statute of limitations as an affirmative defense, the Department was well aware that it was the central issue in the litigation. The Department made the statute of limitations the principal focus of its trial memorandum and stated therein "Puget Power, on the other hand, claims that it may assert a statute of limitations bar against the State . . ." Additional Clerk's Papers, at 5. CR 15(b) permits amendment of pleadings when an issue is tried with the consent of the parties, and also provides that failure to amend does not affect the result of a trial on those issues. Affirmative defenses are within the scope of CR 15(b). *Rainier Nat'l Bank v. Lewis*, 30 Wn. App. 419, 423, 635 P.2d 153 (1981).

---

[1] In 1983, RCW 63.28 was repealed and replaced by RCW 63.29. The change, however, does not impact the issues in this case.

Puget did not waive the limitations defense by failure to plead it.

■ Nor did Puget waive its right to assert the defense against the Department by occasionally paying on time–barred checks. "To constitute a waiver other than by express agreement, there must be unequivocal acts or conduct of the vendor evincing an intent to waive." *Birkeland v. Corbett*, 51 Wn.2d 554, 565, 320 P.2d 635 (1958). This court has also explicitly held that one against whom a waiver is claimed must have intended "to relinquish such right, advantage, or benefit; and his actions must be inconsistent with any other intention than to waive them." *Bowman v. Webster*, 44 Wn.2d 667, 669, 269 P.2d 960 (1954). Here there was no general written acknowledgment of time–barred debts communicated to creditors. The trial court recognized, and we agree, that Puget had the discretion to occasionally waive the statute of limitations without losing the right to assert it when it so chose.

The Department urges that even if Puget could have raised a limitations defense against the Department's claim to the deposits, failure to file a report and raise the defense in the report precludes raising it now. There is little support for this position. Puget did not file an abandoned property report but the statutory penalties for failure to file the report were for willful failure to file. Former RCW 63.28.310(1). The Department does not claim Puget's failure was "willful." Puget reasonably believed it need not file, reasoning that the property could not be claimed by the owner or by the Department a year prior to presumed abandonment under the statute. That conduct does not rise to the level of willful failure to file. The understandable conclusion Puget came to under the circumstances does not preclude Puget from now raising a limitations defense.

II

The Washington Legislature enacted the Uniform Disposition of Unclaimed Property Act in 1955. The measure is an almost exact duplicate of the model UPA. 8A U.L.A. 223

(1983). Significantly, the model UPA has a section which provides that periods of limitations shall not be a bar to the State's right to the property. UPA § 16, 8A U.L.A. 257 (1983). The Washington Legislature chose not to include that provision when it enacted Washington's UPA. The Department twice tried unsuccessfully to amend the UPA, first to provide access to certain abandoned property before the owner's statute of limitations had run, and then to add section 16 of the model UPA. Unable to convince the Legislature, the Department finally adopted its own rule in 1968 which closely paralleled UPA § 16. This court struck down the regulation as being beyond the rulemaking power of the agency. *Pacific Northwest Bell Tel. Co. v. Department of Rev.*, 78 Wn.2d 961, 481 P.2d 556 (1971). Finally, in 1979 the Legislature enacted RCW 63.28.225[2] which is a codification of UPA § 16.

The Department urges the court to read *Bell* to require a holder of presumed abandoned property to report the abandonment and to assert a statute of limitations defense in the report or lose it. *Bell* does suggest such a course of action, but does not so require. *Bell,* at 967. The *Bell* court found that the Department's right to abandoned property is purely derivative and therefore RCW 4.16.160, which precludes a limitations defense against the State, is inapplicable. *Bell,* at 964. There, too, the court noted the legislative history of the UPA and found persuasive the Legislature's refusal to enact section 16 and subsequent Department bills. *Bell,* at 962–63.

The Department cites cases from other jurisdictions which have refused to permit statutes of limitations to preclude the State's right to abandoned property. However, reliance on those cases is mistaken. In *Sennett v. Insurance Co. of N. Am.,* 432 Pa. 525, 247 A.2d 774 (1968), the court held that the State's right to escheat is separate and distinct from the owner's right to claim property. That analysis is contrary to our analysis in *Bell* wherein we found the

---

[2]RCW 63.28.225 became RCW 63.29.290 in 1983.

State's right purely derivative and therefore no greater than the owner's. Consequently, *Sennett* is not persuasive. The Supreme Judicial Court of Massachusetts interpreted a provision of its abandoned property act to require reporting of abandoned property even after the owners' rights had ceased. *Treasurer & Receiver Gen. v. John Hancock Mut. Life Ins. Co.*, 388 Mass. 410, 446 N.E.2d 1376 (1983). However, there the court was interpreting a substantially different abandoned property scheme and specific statutory language which does not appear in our UPA. Although the sentiment the court expresses appears relevant, the factual differences in the cases make it unpersuasive in this situation.

The California legislature adopted an abandoned property statute similar to Washington's in 1959. Cal. Civ. Proc. Code §§ 1500–1527 (West 1982). Their statute, however, included a provision, similar to section 16 of the model UPA, which requires an abandoned property report despite the availability of a limitations defense against the owner. While deciding a holder's statute of limitations defense to a claim by the State, the California Supreme Court took pains to clarify that the statute applied only to claims on which the statute of limitations had run between the holder and the owner *after* the effective date of the statute. *Douglas Aircraft Co. v. Cranston,* 58 Cal. 2d 462, 466, 374 P.2d 819, 24 Cal. Rptr. 851 (1962). The analysis supports Puget's position that prior to Washington's adoption of RCW 63.28.225, the limitations defense available against the owner was applicable against the Department as well. The other California cases the Department relies on do not change the *Douglas* court's analysis.

Finally, the Department, relying on RCW 63.28.170 and .190, urges this court to find a requirement to assert a statute of limitations defense in an abandoned property report. However, nowhere in the statute is there such a requirement. Consequently, we find as a matter of law that Puget may assert the statute of limitations as a bar to the Department's claims to abandoned utility deposits.

Based on the legislative history of the UPA and our prior case law, we find that the Department had no greater right to the utility deposits abandoned between 1955 and 1979 than did the owners. Since the owners' rights were extinguished after 6 years, the Department has no right to those deposits presumed abandoned after 7 years.

## III

The primary issue with regard to the abandoned dividends is whether the statute of limitations had run against the owners before Puget was required to file an abandoned property report. Puget never filed an abandoned property report regarding dividends presumed abandoned, assuming the statute of limitations had run. The Department asserts that, because Puget holds the dividends as trustee, the statute of limitations did not begin to run until Puget repudiated the trust or appropriated the funds.

From 1955 to 1979, Puget from time to time declared dividends and issued checks payable to shareholders. Puget maintained separate accounts for common stock and preferred stock dividends. Amounts actually payable to shareholders were calculated and deposited. "Appropriation" procedures similar to those for unclaimed deposit checks were used if the dividend checks were not cashed within about 2 years. The money was then credited to the miscellaneous revenue account. The amount appropriated from 1955 to 1979, including interest, is $50,707.62. Puget routinely honored stale dividend checks.

The trial court found that Puget held the dividends in trust for the shareholders. The court held that the statute of limitations on the dividend checks had not run against the owners. Consequently, Puget may not now assert the limitations defense against the Department and must deliver the abandoned dividends with accumulated interest.

Puget claims that the court imposed a constructive trust on the dividends and that since Puget had done nothing wrong, the constructive trust was unjustified. The Department argues that once a corporation declares dividends and

sets the amounts aside in separate bank accounts a trust relationship is automatically established. It further contends that Puget's appropriation of the funds was inequitable and unconscionable.

We affirm the trial court's finding that Puget, once it declared the dividends and established separate bank accounts for the funds, became a trustee of those funds. *State v. Jefferson Lk. Sulphur Co.*, 36 N.J. 577, 178 A.2d 329 (1962); 11 W. Fletcher, *Private Corporations* § 5322, at 618 (1971); 18 C.J.S. *Corporations* § 468, at 1115–16 (1939). Having decided that a trust was created by establishing a special account for dividends, we must determine when the statute of limitations begins to run in favor of Puget.

In the case of a resulting trust, the statute of limitations begins to run when the trustee repudiates the trust and notice of such repudiation is brought home to the beneficiary. *Arneman v. Arneman*, 43 Wn.2d 787, 797, 264 P.2d 256, 45 A.L.R.2d 370 (1953). In the case of an express trust, the limitations period does not begin to run "so long as the trust subsists." *Arneman*, at 797. For a constructive trust the statute of limitations begins to run when the beneficiary discovers or should have discovered the wrongful act which gave rise to the constructive trust. *Arneman*, at 800.

Were we to find a resulting trust, Puget's appropriation of the dividends would constitute the earliest possible date of repudiation. However, the limitations period would have begun to run only when the beneficiaries became aware of the repudiation, if at all, at the beginning of this suit. Since the dividends were presumed abandoned after 7 years, *see* RCW 63.28.110, the statute of limitations would not have run against the beneficiaries prior to the statutory presumption of abandonment. Were we to find an express trust, the same analysis would apply since repudiation must be communicated to the beneficiary to begin the running of the limitations period. *Hotchkin v. McNaught–Collins Imp. Co.*, 102 Wash. 161, 172 P. 864 (1918).

In the case of a constructive trust, the appropriation would serve as the wrongful act. It is difficult to determine

when the beneficiaries either did discover or could have discovered the appropriation. As with the resulting and express trust analyses, it is likely and reasonable that discovery would have been no earlier than the bringing of this suit since Puget routinely honored stale dividend checks. The honoring of the stale checks might also lead to the conclusion that Puget never repudiated its trust.

We need not determine what type of trust Puget held because under any type of trust the statute of limitations would not have run against the beneficiaries prior to the statutory presumption of abandonment. Puget therefore should have reported the dividends abandoned. Because the statute of limitations had not run against the owners at the time the dividends were presumed abandoned, Puget's failure to make the report and deliver the dividends and accumulated interest to the Department is a violation of the UPA. Furthermore, since the Department stands in the shoes of the owners and since the statute of limitations had not run against them, it had not run against the Department. We therefore affirm the trial court's judgment.[3]

BRACHTENBACH, DOLLIVER, DIMMICK, PEARSON, and ANDERSEN, JJ., concur.

---

[3] The dissent in this case states that *Bellevue Sch. Dist. 405 v. Brazier Constr. Co.,* 103 Wn.2d 111, 691 P.2d 178 (1984) overruled *Pacific Northwest Bell Tel. Co. v. Department of Rev.,* 78 Wn.2d 961, 481 P.2d 556 (1971). Consequently, it argues, the statute of limitations cannot be enforced against the State. However, *Brazier* involved the State acting in its sovereign capacity. *Bell,* on the other hand, does not involve the State in its sovereign capacity. Rather, the State's rights are derivative. The UPA is an escheat statute and the State steps into the shoes of the owner when asserting rights against the holder. As a result, *Brazier* does not overrule *Bell.*

*Bell* is directly applicable to the instant case. It teaches that in an unclaimed property situation, the statute of limitations is the same for the State as for the owners of the property. Furthermore, the dissent cites no authority for its suggestion that deposits are held in trust and its conclusion that therefore the action is not time barred. Yet, there is ample authority for the majority's application of a trust fund analysis regarding the dividends.

As of 1979, the problem at issue here has been resolved. The Legislature closed the loophole by amending the UPA so that no holder may assert the statute of limitations against the State.

DORE, J. (concurring in part, dissenting in part)—I concur with the majority in denying Puget Power's claim to abandoned dividend funds, but dissent to their approval of Puget's retention of customers' abandoned performance deposits.

Between 1955 and 1979, Puget required new customers who were poor credit risks to make deposits to ensure their payment of Puget's electrical bill. These deposits remained the customers' property even though Puget retained possession of them. Upon termination of service, the customer was entitled to recover his full deposit and, after 1965, interest on the deposit as well. It is undisputed that these deposits were never intended as income for Puget.

Between these same years, Puget declared dividends and issued dividend checks to its shareholders. On occasion, some shareholders would fail to cash the dividend checks. Likewise, there were some customers who would fail to cash deposit refund checks. These funds accumulated in Puget's bank account.

Puget is seeking to keep the unclaimed deposits which amount to approximately $140,500[4] and the unclaimed dividends amounting to approximately $50,700. Puget does not advance any reason why it should be entitled to keep the unclaimed money. Instead, it is acting in a defensive posture: it claims that the statute of limitations bars the State from recovering the money. The Department of Revenue claims that the State should receive these abandoned funds pursuant to the Uniform Disposition of Unclaimed Property Act, RCW 63.28 (now codified in RCW 63.29), and that the statute of limitations cannot be raised against the State.

---

[4]Between 1967 and 1979, the unclaimed deposits amounted to approximately $87,500; it is estimated that between 1955 and 1966 these unclaimed deposits amounted to approximately $53,000.

512

## Decision

The majority rationalizes its award of abandoned deposits to Puget based on the reasoning of *Pacific Northwest Bell Tel. Co. v. Department of Rev.*, 78 Wn.2d 961, 481 P.2d 556 (1971), which held that the statute of limitations may be a bar to the State's claim of right under the Uniform Disposition of Unclaimed Property Act, RCW 63.28. *Bell,* however, is a divergence from the law and has been recently overruled.

*Bell* held that a private corporation could assert the statute of limitations against the State. Recently we have reaffirmed the principle that the State, acting in its sovereign capacity, is immune from the application of limitation periods to actions brought for the benefit of the State. *Bellevue Sch. Dist. 405 v. Brazier Constr. Co.,* 103 Wn.2d 111, 691 P.2d 178 (1984). Chapter 4.16 of the Revised Code of Washington sets forth the time limitations in which different causes of action may be brought. In RCW 4.16, the Legislature clearly provided that the State is not subject to any such time limitations:

> The limitations prescribed in this chapter shall apply to actions brought in the name or for the benefit of any county or other municipality or quasimunicipality of the state, in the same manner as to actions brought by private parties: *Provided, That there shall be no limitations to actions brought in the name or for the benefit of the state,* and no claim of right predicated upon the lapse of time shall ever be asserted against the state . . .

RCW 4.16.160. (Italics mine.) This codification has existed without exception for over 100 years in this state. *See* Laws of 1955, ch. 43, § 2, p. 334; Laws of 1903, ch. 24, § 1, p. 26; Laws of 1873, p. 10, §§ 34, 35; Laws of 1869, p. 10, §§ 34, 35; Laws of 1854, p. 364, § 9; *see also* Rem. Rev. Stat. § 167. Consequently, it is clear that *Bell* was wrongly decided and, in any event, has been effectively overruled by *Bellevue Sch. Dist. 405.*

*Bell* not only ignored statutory law but also virtually

nullified this state's unclaimed property act.[5] Under *Bell,* there seldom would be a circumstance where the Uniform Disposition of Unclaimed Property Act (Act) could be applied. Under the Act, the following time periods governed when property was deemed abandoned: RCW 63.28.080, property held by banking and financial organizations, 12 years; RCW 63.28.090, property held by life insurance companies, 7 years; RCW 63.28.100, property held by utilities, 7 years; RCW 63.28.110, property held by business associations, 7 years; RCW 63.28.120, property held in course of dissolution of business association, 2 years after date of final distribution; RCW 63.28.130, property held by fiduciaries, 7 years; RCW 63.28.140, property held by a court or public officers, 7 years; and RCW 63.28.150, all property not specifically covered, 7 years. Thus, all but one type of property was not considered abandoned until 7 years after it was unclaimed. Yet, the statute of limitations in which to bring actions, except for actions to recover real estate or special assessment, or an action based upon a judgment by a court, are all less than 6 years. *See* RCW 4.16.020 *et seq.* Thus, the consequence of *Bell* was to effectively repeal the Act. The majority never discusses this aspect of its decision. Yet that is the inescapable result of the majority's decision since property would never be deemed abandoned until after the statute of limitations had run. Consequently, under the majority's analysis, banks, life insurance companies, utilities, business associations, fiduciaries, and court and public officers, from 1955 to 1979, could all deprive the State of abandoned property because it would not be deemed abandoned until after the statute of limitations had run.

PUGET POWER'S UNJUST ENRICHMENT

In addition to the fact that the statute of limitations defense cannot be raised against the State, Puget is not entitled to keep the unclaimed deposits for the same reason

---

[5]A basic tenet of statutory construction is that the Legislature does not pass meaningless acts. *Guinness v. State,* 40 Wn.2d 677, 246 P.2d 433 (1952).

the majority provides for holding that Puget is not entitled to the unclaimed dividends. The majority correctly characterizes the abandoned dividends as trust funds. Consequently, the statute of limitations has not yet run.[6] The majority, however, does not explain what type of trust was created by the abandoned dividends. Yet the majority should have analyzed what kind of trust existed here because if it did it would have concluded that the unclaimed deposits should be accorded the same trust status as the unclaimed dividends.

It is clear that the unclaimed dividends do not constitute an express trust. An express trust is intentionally created between the parties of the trust agreement. *Diel v. Beekman,* 7 Wn. App. 139, 499 P.2d 37 (1972). There is no evidence in the record that Puget intended to create an express trust with regard to the unclaimed dividends. Indeed, Puget strenuously argues that no trust existed with regard to such funds. Its act of appropriating the unclaimed dividends after 2 years is further proof that it never intended to create an express trust.

It is equally clear that the unclaimed dividends did not create a resulting trust.

> There are three situations in which the trust which arises is properly called a resulting trust: (1) where an express trust fails in whole or in part; (2) where an express trust is fully performed without exhausting the trust estate; (3) where property is purchased and the purchase price is paid by one person and at his direction the vendor conveys the property to another person.

5 A. Scott, *Trusts* § 404.1 (3d ed. 1967). The present set of facts cannot be characterized as any one of the three situations listed above.

The final type of trust that the unclaimed dividends could be characterized as is a constructive trust. Unlike an express or a resulting trust, a constructive trust can arise even though the parties never intended to create a trust.

---

[6]See majority opinion, part III.

*Proctor v. Forsythe,* 4 Wn. App. 238, 480 P.2d 511 (1971); 5 A. Scott, *Trusts* § 462.1 (3d ed. 1967). Instead of finding intent to create a trust, the important objective in deciding whether to impose a constructive trust is preventing unjust enrichment. As Judge Cardozo stated:

A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee . . .

*Beatty v. Guggenheim Exploration Co.,* 225 N.Y. 380, 386, 122 N.E. 378 (1919). Under Washington law, the holder of the property need not have acquired it through any wrongful act. *Scymanski v. Dufault,* 80 Wn.2d 77, 491 P.2d 1050 (1971). The only thing of importance is that the continued possession of property would amount to unjust enrichment. *Scymanski v. Dufault, supra; Proctor v. Forsythe, supra.*

Thus, regarding the unclaimed dividends, it would be an unjust enrichment of Puget Power were it allowed to keep the dividends since once it declared the dividends, the property rights to the dividends passed on to the shareholders or their assigns. In the same manner, allowing Puget Power to keep the unclaimed deposits would amount to unjust enrichment since this money *never* belonged to it. Instead, it always belonged to the users who were forced to make such deposits in order to receive electricity.

The only difference between unclaimed dividends and unclaimed deposits is that the dividends were kept in a separate account. Yet this difference is not enough to impose a constructive trust in the former but not in the latter situation. Segregation of funds is important when the existence of an *express* trust is in question. *Kronisch v. Howard Sav. Inst.,* 154 N.J. Super. 576, 382 A.2d 64 (1977). However, in deciding whether to impose a constructive trust different rules apply. A constructive trust is not a true trust; instead, it is imposed by a court to prevent unjust enrichment. Thus, it would be illogical not to impose a constructive trust just because the holder mixes the funds

with other property. *See Pollution Control–Walther, Inc. v. Belzer,* 406 So. 2d 372 (Ala. 1981); *State v. United States Steel Co.,* 12 N.J. 51, 95 A.2d 740 (1953). Consequently, the unclaimed deposits, as well as the unclaimed dividends, should be characterized as being held in a constructive trust by Puget Power. As such, as explained by the majority, the statute of limitations has not yet run.

## CONCLUSION

In the final analysis, the majority disregards RCW 4.16 and our decision in *Bellevue Sch. Dist. 405 v. Brazier Constr. Co., supra,* and holds that the statute of limitations defense can be asserted against the State. In addition, it finds that between 1955 and 1979, RCW 63.28 was a meaningless act. Furthermore, it finds that dividends are trust funds but the unclaimed deposits are not.

The majority's decision today hands to Puget Power an undeserved enrichment. These utility deposits were never intended to constitute income to Puget Power. Moreover, Puget does not advance any legal basis that would entitle it to keep the money. In addition, there are no public policy grounds for allowing Puget to keep this money. On the other hand, the Legislature intended that unclaimed property go to the State where a trust fund[7] would be maintained so that owners could always recover their money. And from a public policy standpoint, these funds should go to the State where it can be used for the benefit of all the people rather than allowing a private profitmaking corpo-

---

[7]RCW 63.29.230 states, in part, as follows: "[T]he department shall promptly deposit in the general fund of this state all funds received under this chapter, including the proceeds from the sale of abandoned property under RCW 63.29-.220. The department shall retain in a separate trust fund an amount not less than two hundred fifty thousand dollars from which prompt payment of claims duly allowed must be made by the department. Before making the deposit, the department shall record the name and last known address of each person appearing from the holders' reports to be entitled to the property and the name and last known address of each insured person or annuitant and beneficiary and with respect to each policy or contract listed in the report of an insurance company its number, and the name of the company. The record must be available for public inspection at all reasonable business hours."

ration to keep these funds for its own use.

I would reverse the trial court's ruling on the unclaimed deposits and vest them in the State of Washington and affirm as to unclaimed dividends.

WILLIAMS, C.J., concurs with DORE, J.