**Cleda D. BUSH, Appellee,**

v.

**Alvin G. TAYLOR and Barbara F. Taylor, Appellants.**

**No. 88–2145.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 14, 1989.

Decided Jan. 11, 1990.

Richard Medlock, Little Rock, Ark., for appellants.

Frank Poff, Jr., Little Rock, Ark., for appellee.

Before ARNOLD, BOWMAN and MAGILL, Circuit Judges.

ARNOLD, Circuit Judge.

The issue in this case is whether Alvin G. Taylor, a debtor under Chapter 7 of the Bankruptcy Code, is entitled to a discharge of his ongoing obligation under a state-court divorce decree to remit to his former wife one-half of the payments he receives under a pension plan. The Bankruptcy Court denied the discharge, on the grounds that the prospective obligation to turn over a percentage of the pension payments was not a "debt" subject to discharge, and, in any event, Taylor held his ex-wife's portion of the pension only as a constructive trustee. The District Court affirmed. We believe that the obligation to remit a portion of pension payments falls within the broad and flexible definition of debt under the Code. In this case, the obligation arises from a property settlement, a species of debt Congress has not chosen to except from discharge. We also believe that no constructive trust arose in this case. Accordingly, we reverse the judgment of the District Court.

I.

Taylor and appellee Cleda D. Bush were divorced in Pierce County, Washington, upon entry of a decree of dissolution of marriage in 1975. Bush was awarded, as her "sole and separate property," one-half of Taylor's benefits under an employment pension plan.

The parties returned to court when Taylor failed to send Bush her share of the monthly pension payments as he received them. On July 8, 1982, an agreed judgment and order, along with a covenant not to execute on the judgment, were entered in the Superior Court of Pierce County, Washington. Under the order, Taylor was to pay Bush one-half of the $16,412.52 in benefits he had retained through June 30,

1982. The order also modified Taylor's obligation to remit to Bush one-half of the pension benefits; Taylor was ordered to pay $500.00 monthly and one-half of all subsequent increases in the amount of monthly pension benefits he received for the rest of his life.

In the accompanying covenant not to execute, Bush agreed not to execute on the July 8 judgment if Taylor paid her $8,500.00 immediately, made the $500.00 monthly payments, and remitted one-half of all future increases in pension benefits. The covenant not to execute also provided that if Taylor were more than twenty days late in making any of his payments under the agreement, the covenant would automatically terminate, and Bush could employ any legal means necessary to collect the full amount of the agreed judgment and order.

On May 29, 1987, Taylor and his wife, Barbara Taylor, filed the instant Chapter 7 bankruptcy petition. They listed among their debts Bush's claim to half of the pension benefits. Bush submitted a proof of claim based on her right to a share of the pension benefits, and filed an objection to discharge of this obligation. Following a hearing on the objection, the Bankruptcy Court ruled that Bush was entitled to one-half of all future pension benefits as her separate property. The Court found that the covenant not to execute automatically terminated when (right before filing for bankruptcy) Taylor missed a payment by more than twenty days, so that Bush's right to her separate property under the dissolution decree was reinstated. It would be an inequitable result to Bush and unjust enrichment to Taylor, the Court concluded, to allow Taylor to reclaim property that belonged solely to Bush.

The Court rejected Bush's claim to that amount which became overdue between entry of the agreed judgment and the date of the bankruptcy petition. The Court reasoned that this overdue amount constituted a debt for property settlement, which was dischargeable in the Chapter 7 proceedings.

On appeal, the District Court affirmed the judgment of the lower court. Relying on *In re Teichman,* 774 F.2d 1395 (9th Cir.1985), the Court explained that the payments which had not yet become due and payable to Bush at the time of the petition did not represent debts dischargeable under the Code. See 11 U.S.C. § 727(b) (discharge covers debts arising before order for relief); see also *Teichman,* 774 F.2d at 1397–98. Additionally, the District Court concluded that Taylor had been placed in a fiduciary position by the Washington divorce court, and later by his own agreement, so that he merely held the pension payments for Bush's benefit, as a constructive trustee. Finally, the Court stated that, without regard to the Taylors' needs, it would be inequitable for Bush to be deprived of her "sole and separate property" in the bankruptcy proceedings. This appeal followed.

## II.

Courts have not been receptive to attempts by a former spouse to retrieve in bankruptcy an interest in pension payments that has been awarded to an ex-spouse upon divorce.[1] Some courts hold that the debtor's obligation to turn over a share of pension payments does not become a "debt" until the debtor receives each disbursement from the pension fund; therefore, payments to be made to the non-debtor ex-spouse after the filing of the bankruptcy case are postpetition debts, not subject to discharge. *See In re Chandler,* 805 F.2d 555, 557 (5th Cir.1986), *cert. denied,* 481 U.S. 1049, 107 S.Ct. 2180, 95 L.Ed.2d 837 (1987); *Teichman,* 774 F.2d at 1397–98 (because ex-husband was under no obligation to pay former wife until Air Force paid him, debt did not arise until the

---

**1.** For a discussion of various approaches taken by courts to avoid this result, including designation of pension awards as support payments, see Note, *Pension Awards in Divorce & Bankruptcy,* 88 Colum.L.Rev. 194, 208–211 (1988). The author concludes that Congress should recognize the "modern" view of marriage as an "economic partnership," and except from discharge property settlement awards. This, however, is not what Congress has (yet) chosen to do, and there is no contention in this case that the payments at issue were for Bush's support.

payment was due); *In re McNierney*, 97 B.R. 648, 651 (Bankr.S.D. Fla.1989). The opinions of the Bankruptcy Court and District Court in this case reflect this view.

A related approach posits that, if there is a "debt," it rests upon the military or employer pension fund, not the debtor, and hence may not be discharged in the debtor's Chapter 7 case. See *In re Hall*, 51 B.R. 1002, 1003 (S.D.Ga.1985) (although former wife held "claim" for pension benefits, liability for claim rested on Army, which made direct payments, not ex-husband); *In re Manners*, 62 B.R. 656, 658 (Bankr.D.Mont.1986) (United States, not debtor, liable for pension payments); see also *In re Mace*, 82 B.R. 864, 868 (Bankr.S. D.Ohio 1987) (ex-husband was merely "conduit" for payments due to former wife from share of pension fund that belonged to her); *In re Thomas*, 47 B.R. 27, 33 (Bankr.S.D.Cal.1984) (court had no power to modify ex-wife's interest in her separate property).

Finally, there is some support for the view that an ex-spouse holds pension payments in trust for the spouse to whom a share of such benefits has been awarded. *See Teichman*, 774 F.2d at 1400 (Fletcher, J., dissenting) (ex-husband invested with control over benefits belonging to wife was responsible for transferring them to ex-wife under divorce decree, so that a trust was created); *cf. In re Dahlin*, 94 B.R. 79, 81 (Bankr.E.D.Va.1988) (where divorce decree created express trust in favor of wife, debtor-husband bound to remit payments). We turn now to consideration of these arguments against discharge of an obligation to share pension payments.

### A.

■ First, we do not believe these cases provide sufficient reason to treat Taylor's ongoing obligation as something other than a debt for property settlement, the payment of which is not yet due. We begin with the definitions provided by the Bankruptcy Code. Under 11 U.S.C. § 101(11) (1982) a "debt" is simply "liability on a claim." A "claim," in turn, is defined as

(A) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, or

(B) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

11 U.S.C. § 101(4) (1982).

Congress chose this broad definition of "claim" so that "all legal obligations of the debtor, no matter how remote or contingent, [may be] dealt with in the bankruptcy case," thus allowing the "broadest possible relief in the bankruptcy court." S.Rep. No. 989, 95th Cong., 2d Sess. 21–22, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5807–08; H.R.Rep. No. 595, 95th Cong., 2d Sess. 309, *reprinted in* 1978 U.S. Code Cong. & Admin.News 5963, 6266. Given this definition, Bush could hardly argue that she has no "claim" against Taylor for a share of the pension payments in the months and years to come—however contingent or unmatured this claim may be. There is no indication that a court has ordered the pension fund to pay benefits to Bush, or that the fund administrators have agreed to do so; therefore, only Taylor is "liable" on this claim.[2]

Because Bush has a claim for which Taylor is liable, there is a debt that came into existence when the state court made Taylor liable on the claim. Although a debt for alimony, maintenance, or support is not subject to discharge, 11 U.S.C. § 523(a)(5), Bush stipulated below that the obligation was for a property settlement. The debt is therefore dischargeable. That the divorce decree labeled Bush's interest her "sole

---

**2.** *Cf.* 32 C.F.R. Pt. 63 (Department of Defense regulations allowing payment of retirement benefits directly from military to former spouse). Because the issue is not before us, we express no view as to whether an order requiring payment directly from the pension fund to the nondebtor ex-spouse would produce a different result in a case such as this.

and separate" property does not compel a different result. Whenever a debt arising from a division of marital property is discharged, the nondebtor spouse is thereby deprived of his or her separate interest in property. Congress has chosen not to except property settlements from discharge, and we are not at liberty to redefine "debt" in order to accomplish this result. If property had been conveyed to Bush *in specie* at the time of the decree or later, a different case would be presented, but that did not happen here. Taylor's obligation, and Bush's claim, is expressed in terms of a duty on Taylor's part to make periodic future payments, and that duty is a "debt" within the meaning of the bankruptcy statute.

### B.

■■■ We next address the lower courts' determination that Taylor receives one-half of the monthly pension payments only in his capacity as a constructive trustee, with Bush as the beneficiary of the trust. "Constructive trusts are created by courts of equity whenever title to property is found in one who in fairness ought not to be allowed to retain it." G.T. Bogert, *Trusts*, § 77, at 286 (6th ed. 1987). Although Washington state courts generally require a convincing showing of fraud, overreaching, or other wrongdoing, see, *e.g.*, *In re Marriage of Rhoads*, 645 P.2d 1153, 1154 n. 1 (Wash.App.1982), it is not strictly necessary that the holder of the property have acquired it through some wrongful act. *Department of Revenue v. Puget Sound Power & Light Co.*, 103 Wash.2d 501, 515, 694 P.2d 7, 15 (en banc 1985) (Dore, J., concurring & dissenting). The principal requirement is that unjust enrichment would result from continued possession of the property by one who now holds it. *Id.* In this case, the Bankruptcy Court held that Taylor would be unjustly enriched by retaining the entire monthly payment. We do not agree that a constructive trust

properly may be imposed under these circumstances.

As we have shown, Taylor is liable for a debt that is subject to discharge under the Code. We do not accept that operation of the Code in its intended manner here results in unjust enrichment. As far as the Code is concerned, Bush's loss is not materially different from that of any creditor who may have extended goods, services, or funds to the debtor before bankruptcy, and subsequently is barred from collecting the resulting just debt. There are sound policy arguments for treating property-settlement debts to former spouses differently, but the drafters of the Code declined to do so. We may not circumvent their intent by labeling discharge of debts "unjust enrichment." Certainly, no fraud or breach of fiduciary duty with respect to future payments has been shown. There is a sense in which anyone who fails to pay a debt is unjustly enriched, and yet the whole purpose of the bankruptcy law is to free people from their debts in order to give them a fresh start. We cannot permit the too-free use of the label "constructive trust" to circumvent this purpose.

Moreover, it is clear that we deal with a debt, not a trust, in this case. Generally,

> if the obligor is to meet his obligation out of particular property he is probably intended to be a trustee of that property, but if he is to perform his duty by the use of any property in his hands which is convenient to him then he is probably intended to be under contract duties only.

G.T. Bogert, *supra*, § 27, at 81. There is no indication Taylor was to segregate the monthly pension payments from his other resources and remit the proper amount to Bush from the former only. Indeed, modification of the original decree to provide for $500 monthly payments suggests this was not the case.[3]

---

**3.** The Bankruptcy Court reasoned that Taylor's default under the terms of the covenant not to execute terminated that agreement and reinstated the terms of the divorce decree. Tr. at 19–20. Actually, the covenant not to execute provided

that a breach by Taylor would terminate the covenant and allow Bush to collect on the July 8, 1982 agreed judgment—"attached Exhibit A" —which itself provided for $500 monthly payments.

## III.

In summary, we hold that the obligation to remit a percentage of pension payments to a former spouse as part of a property settlement is a debt. The Code makes such debts dischargeable. This result, however unpalatable, may not be avoided by resort to a new definition of debt or strained application of equitable devices.

Accordingly, we remand this case to the District Court with instructions that it be returned to the Bankruptcy Court for further proceedings consistent with this opinion.

BOWMAN, Circuit Judge, dissenting.

The Court's decision is indefensible. It permits a deadbeat husband to use the Bankruptcy Code's grace for honest debtors as a slick scheme for euchring his former wife out of her "sole and separate property" in one-half of the benefits he receives under a pension plan. Under the Court's decision, the former wife's entitlement to one-half of the pension benefits—a property right established by judicial decree when the marriage was dissolved—becomes merely another debt dischargeable in bankruptcy. The result is that, post-bankruptcy, the husband will enjoy 100 per cent of the monthly pension benefits for as long as he lives, and his ex-wife will be deprived forever of her half of these benefits. Short of outright thievery, it is hard to imagine a more compelling case of unjust enrichment.

If I truly thought that Congress had commanded such a bizarre and unjust result, I would join the Court's opinion. I believe, however, that Congress has commanded no such thing. Although the Court correctly notes, *ante* at 965, that the Bankruptcy Code provides a broad definition of "debt," the Court's reliance on that definition is misplaced. The essential concept of "debt"—whether defined broadly or narrowly—posits a claim against the debtor for which he is answerable out of his own property. Here, the former wife does not press a claim against the husband's property. By reason of the decree dissolving the marriage, the husband was stripped of his property interest in one-half of the future pension payments, and to that extent his property interest in these payments was transferred to and became the property of his ex-wife. To speak of the husband's duty not to interfere with his former wife's enjoyment of property already adjudicated to be hers as a "debt" within the meaning of the Bankruptcy Code is to attribute to Congress an intention that it has nowhere expressed and that it almost certainly never had.

The Court acknowledges, *ante* at 964, that "[c]ourts have not been receptive to attempts by a former spouse to retrieve in bankruptcy an interest in pension payments that has been awarded to an ex-spouse upon divorce." That is indeed so, and there is good reason for it. Simply put, the Bankruptcy Code is designed to give a fresh start to honest debtors whose debts have grown larger than their ability to pay. The Code is *not* intended to provide a way for a tricky debtor to obtain clear title to the property of another. Yet here that is the very result our Court ordains, since under its decision the husband will walk away from his discharge in bankruptcy with clear title to his ex-wife's half of the ongoing monthly pension payments from his former employer. He will have full use and enjoyment of the monthly pension payments for the rest of his life. His ex-wife will have nothing, despite the carefully drawn terms of the divorce decree explicitly awarding her one-half of these payments as her "sole and separate property."

This result is unconscionable, and we should not countenance it. Nor are we somehow required to do so. The Bankruptcy Court quite correctly and quite sensibly found that the ex-wife's half of the pension payments was not a part of the husband's estate and that with respect to her half of these payments he was a constructive trustee for her benefit. The District Court agreed. Both courts emphasized the unjust enrichment that the debtor would enjoy were he to succeed in his gambit to have his wife's share of the ongoing pension payments treated as a debt discharge-

able in bankruptcy. The decisions of the lower courts are based on findings of fact that are not clearly erroneous and on a correct reading of the law. In addition, those decisions have the virtue of avoiding the strong sense of injustice that today's decision creates. I therefore respectfully dissent and cast my vote to affirm the District Court.