549 So.2d 1301 (1989)
Bill COLE, Treasurer of the State of Mississippi
v.
NATIONAL LIFE INSURANCE COMPANY, Life & Casualty Company of Tennessee and American General Life Insurance Company of Delaware.
No. 07-58504.
Supreme Court of Mississippi.
September 13, 1989.
Edwin Lloyd Pittman, Atty. Gen., elected Supreme Court Justice Jan. 3, 1989, Mike C. Moore, Atty. Gen., Lynn Fitch Mitchell and W.O. Dillard, Sp. Asst. Attys. Gen., Jackson, for appellant.
E. Clark Rumfelt, Wells Wells Marble & Hurst, Jackson, for appellees.
Before DAN M. LEE, P.J., and PRATHER and ROBERTSON, JJ.
DAN M. LEE, Presiding Justice, for the Court:
Appellees, National Life and Accident Insurance Company, Life and Casualty Insurance Company of Tennessee, and American General Life Insurance Company of Delaware (hereinafter "the Companies") sought and obtained an adjudication in the Chancery Court of the First Judicial District of Hinds County, Mississippi, that certain funds they are holding are not subject to the reporting and payment provisions of Mississippi's Uniform Disposition of Unclaimed Property Act, §§ 89-12-1, et seq., Miss. Code Ann. (1972) (hereinafter the "Mississippi Act"). As reflected in the Order of the Chancellor dated February 6, 1987, the case was submitted to the Chancellor on briefs and written stipulation of facts and evidence.
The Mississippi Act had an effective date of July 1, 1982, and the claims of the owners and payees to the funds in question apparently became time-barred by Mississippi's statute of limitations prior to the effective date. Appellant Bill Cole, Treasurer of the State of Mississippi (hereinafter the "Treasurer"), had contended that the State of Mississippi succeeded the owners' and payees' claims to the funds, and that the State of Mississippi could not be time-barred. Finding no provision in Mississippi's Act to retroactively remove the bar of the statute of limitations, the chancellor rendered his opinion on June 11, 1987, that the particular funds in question are not subject to the reporting and payment provisions of Mississippi's Act. The chancellor further found that the Treasurer should be permanently and perpetually enjoined from enforcing Mississippi's Act regarding the particular funds in issue. In accordance with his opinion, the chancellor entered a final decree, declaratory judgment, and injunction on June 22, 1987. It is from the final decree, declaratory judgment, and injunction that the Treasurer has perfected his appeal and assigns as error:
I. The Chancellor was Manifestly Wrong and Erred in Rendering a Judgment that the Items and Amounts in Issue are Not Subject to *1302 Mississippi's Uniform Disposition of Unclaimed Property Act, §§ 89-12-1, et seq.

STATEMENT OF THE FACTS
Mississippi's Uniform Disposition of Unclaimed Property Act (the "Mississippi Act") was enacted by the State of Mississippi effective July 1, 1982. It is a codification of the Revised 1966 Uniform Disposition of Unclaimed Property Act (the "Uniform Act") approved by the National Conference of Commissioners on Uniform State Laws and the American Bar Association. The purpose of the Uniform Act is stated in Douglas Aircraft Co. v. Cranston, 58 Cal.2d 462, 374 P.2d 819, 24 Cal. Rptr. 851 (1962):
The objectives of the Act are to protect unknown owners by locating them and restoring their property to them and to give the State rather than the holders of unclaimed property the benefit of the use of it, most of which experience shows will never be claimed.
Mississippi's Act, like the 1966 Revised Uniform Act, is "custodial" in nature  that is to say, it does not result in the loss of the owner's property rights. The State takes custody and remains the custodian in perpetuity. Although the actual possibility of his/her presenting a claim in the distant future is not great, the owner retains his/her right of presenting a claim at any time, no matter how remote. State records have to be kept on a permanent basis. In this respect, the measure differs from the "escheat" type of statute, pursuant to which the right of the owner is foreclosed and the title to the property passes to the state.
The Mississippi Legislature joined other enacting states in the desire for uniformity in this area of the law, and this mandate is expressed in § 89-12-55 of Mississippi's Act: "This chapter shall be so construed as to effectuate its general purpose to make uniform the laws of those states which enact it."
The Companies are deemed to be "insurance corporations" under Mississippi's Act. The Treasurer is charged with the administration and enforcement of Mississippi's Act.
Mississippi's Act defines "abandoned property" with regard to various entities, and it specifically provides in § 89-12-7(1) that:
[F]unds held or owing by a life insurance corporation under any life or endowment insurance policy or annuity contract which has matured or terminated shall be presumed abandoned if unclaimed and unpaid for more than seven (7) years after the funds became due and payable as established from the records of the corporation.
Section 89-12-23 requires the reporting of the presumed abandoned funds to the Treasurer, and after certain published notices by the Treasurer, § 89-12-29 requires the abandoned property to be paid or delivered to the Treasurer if the owner has not established his right to the abandoned property.
In addition, § 89-12-35 of Mississippi's Act provides:
The expiration of any period of time specified by statute or court order, during which an action or proceeding may be commenced or enforced to obtain payment of a claim for money or recovery of property, shall not prevent the money or property from being presumed abandoned property, nor affect any duty to file a report required by the provisions of this chapter, or to pay or deliver abandoned property to the treasurer.
This provision corresponds exactly with § 16 of the Uniform Act.
Under § 89-12-23 of Mississippi's Act, the initial report to the Treasurer from the Companies was due on May 1, 1983, and according to § 89-12-23(8), the initial report was to "include all items of property that would have been presumed abandoned if this chapter had been in effect since July 1, 1969... ." Since there is a seven-year dormancy period under Mississippi's Act, the initial report purportedly covered items maturing or terminating or becoming due and payable between July 1, 1962, and December 31, 1975 (i.e., therefore, presumed *1303 abandoned under the Act on or before December 31, 1982).
The second report was due under Mississippi's Act on May 1, 1984, and that report would have required the Companies to report funds to the Treasurer which matured or terminated or became due and payable between January 1, 1976, and December 31, 1976 (i.e., therefore, presumed abandoned under the Act on or before December 31, 1983).
The funds in issue, allegedly reportable for the two specified time periods total an amount of $413,097.26. The funds amount to the owing of $267,782.86 by National Life and Accident Insurance Company, $144,920.06 by Life and Casualty Insurance Company of Tennessee, and $394.34 by American General Life Insurance Company of Delaware. Such funds include items such as matured industrial endowments, matured ordinary endowments, death claims, outstanding checks, industrial district office pay and ordinary district office pay, all of which matured and became due, returnable, demandable and payable between July 1, 1962, and June 30, 1976, which is more than six years prior to the effective date of Mississippi's Act (July 1, 1982).
While the litigation was pending in the chancery court, the reporting and payment to the Treasurer of the disputed funds was held in abeyance by agreement of the parties. Mississippi's Act would have otherwise purported to require the inclusion of the disputed funds in the initial report and part of the second report as "presumed abandoned."

ANALYSIS

I. What is the Standard of Review for a Chancellor's Decree?
When presented with what is essentially a question of law, the familiar manifest error/substantial evidence rules have no application to our appellate review of such questions. The principle of "manifest error" applies only to a factual situation. If the chancellor is manifestly wrong in basing his decision upon the facts, then this Court will reverse; otherwise, we will affirm. This rule does not apply on questions of law. Boggs v. Eaton, 379 So.2d 520, 522 (Miss. 1980); Mississippi State Highway Commission v. Dixie Contractors, Inc., 375 So.2d 1202, 1206 (Miss. 1979); S & A Realty Co. v. Hilburn, 249 So.2d 379, 382 (Miss. 1971); see also, Pullman-Standard, a Division of Pullman, Inc. v. Swint, 456 U.S. 273, 287, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66, 79 (1982).
With regard to a pure question of law, this Court shall conduct a de novo review.

II. Main Issue
As the chancellor stated, "The sole issue before the court is whether § 89-12-35 [§ 16] of Mississippi's Act applies retroactively to lift the bar of the statute of limitations regarding the reporting and payment of the funds in question as `abandoned property.'"
This case is one of first impression in Mississippi, and it includes significant constitutional questions under the Mississippi and United States Constitutions; therefore, in order to properly address the main issue designated above, several sub-issues warrant discussion. They are as follows:
A. How did the Treasurer for the State of Mississippi succeed to the owners' and payees' claims to the disputed funds?
B. Was the bar of the statute of limitations complete against claims of the owners and payees to the disputed funds prior to the effective date of Mississippi's Act?
C. Discussion of the Legislature's intent behind Mississippi's Act with regard to § 89-12-35.
D. Constitutional problems of any retroactive application of § 89-12-35.
E. Discussion of need for uniformity.

A. How did the Treasurer for the State of Mississippi Succeed to the Owners' and Payees' Claims to the Disputed Funds?

There is no dispute between the parties as to this question; nevertheless, it is important *1304 to note how the State derives its interests. The State Treasurer agrees and the Companies concur that the Treasurer acquires his rights by and through the owners of the abandoned property. This conclusion is based on the custodial nature of the Uniform Act under which the courts have consistently held that the rights of the State are indeed derivative from the rights of the owners of abandoned property, e.g., State of Washington, Department of Revenue v. Puget Sound Power & Light Co., 103 Wash.2d 501, 694 P.2d 7 (1985); Insurance Co. of N. America v. Knight, 8 Ill. App.3d 871, 291 N.E.2d 40 (1972). The Supreme Court of Utah addressed the matter in Baker v. Intermountain Farmers Association, 668 P.2d 503 (Utah 1983), as follows:
It is well settled from the custodial nature of the Unclaimed Property Act that the rights of the state are merely derivative from the rights of the owners of the abandoned property. (Citations omitted). "[T]he state has no greater right than that of the payee owner." (Citation omitted). Consistent with our statutory duty to construe the Act so as "to effectuate its general purpose and to make uniform the law of those states which enact it," § 78-44-27, we reaffirm that construction... ." Id. at 507.
Even though both parties are in agreement as to how the Treasurer derives his interest, there is disagreement as to the effect. The Companies contend that "as the chancellor correctly found, the rights of the State, through the Treasurer, to require the reporting and payment of abandoned property are no greater than the rights of the owners and payees of the abandoned property." Consequently, when the owners' and payees' rights became time-barred (six years prior to July 1, 1982), then the State's rights as successor to the owners/payees also became time-barred. The Treasurer, on the other hand, insists that because the State has succeeded to the owners' and payees' interest, then Article IV, § 104 of the Mississippi Constitution dictates that "statutes of limitation in civil causes shall not run against the State, ..." As a result, this constitutional language, coupled with the Treasurer's "retroactive intent" interpretation of § 89-12-35, is the authority from which the Treasurer would have this Court persuaded that the State has a valid claim to the disputed funds.
The Companies refute the Treasurer's constitutional claim, in short, by citing Article IV, § 97, of the Mississippi Constitution, which reads in full:
The Legislature shall have no power to revive any remedy which may have become barred by lapse of time, or by any statute of limitation of this state.
By giving § 89-12-35 a retroactive effect, the Companies argue this violates Art. IV, § 97.

B. Was the Bar of the Statute of Limitations Complete Against Claims of the Owners and Payees to the Disputed Funds Prior to the Effective Date of Mississippi's Act?

The simple answer to this question is "yes."
The parties stipulated that the funds in issue, which would have otherwise been reportable and payable to the Treasurer as "abandoned property," include items which matured and became due, returnable, demandable and payable between July 1, 1962, and June 30, 1976. The time of the running of the statute of limitations commenced on these items on or before June 30, 1976. Applying Mississippi's six-year statute of limitations found in § 15-1-49, Miss. Code Ann., the claims and remedies of the owners and payees to these funds became time-barred on or before June 30, 1982, which is one day prior to the effective date of Mississippi's Act. The chancellor made this express finding:
It is undisputed that the claims of the owners and payees to the funds in question became time-barred by the statute of limitations prior to the effective date of Mississippi's Act.
(Emphasis added).
The effect of the attachment of the bar of the statute of limitations appears well-established in Mississippi. It is beyond dispute that the rights and remedies of the owners and payees to the funds in issue *1305 were completely extinguished on or before June 30, 1982. Section 15-1-3, Miss. Code Ann., provides that "[t]he completion of the period of limitations prescribed to bar any action, shall defeat and extinguish the right as well as the remedy... ." This bar is a vested right, Woodman v. Fulton, 47 Miss. 682 (1873), which cannot be revived. According to Article 4, § 97 of the Mississippi Constitution: "The legislature shall have no power to revive any remedy which may have become barred by lapse of time, or by any statute of limitation of this state."
An important distinction to be made in the case at bar is that the Companies are not contending that any statute of limitation has run directly against the State in this matter. Instead, the right of the State (through the Treasurer) to require reporting and payment of abandoned property is derivative from the rights of the owners and payees, and it is the running of the statute of limitations against those owners and payees and, therefore, presumed to be abandoned on which the Companies now rely.
The Treasurer attempts to equate the Companies' reliance on their vested rights with a prohibited assertion of a statute of limitations directly against the state. To refute this argument, the Companies direct this Court to the Supreme Court of Washington which apparently rejected precisely the same argument in State of Washington, Department of Revenue v. Puget Sound Power & Light Co., 103 Wash.2d 501, 694 P.2d 7 (1985). Citing Pacific Northwest Bell Tel. Co. v. Department of Revenue, 78 Wash.2d 961, 481 P.2d 556 (1971), the Court in the Puget Sound case stated:
The Bell Court found that the Department's right to abandoned property is purely derivative and therefore [Washington's statute], which precludes a limitations defense against the state, is inapplicable.
Puget Sound, supra, 694 P.2d at 11.
Nevertheless, the Treasurer cites Sennett v. Insurance Company of North America, 432 Pa. 525, 247 A.2d 774 (1968), for the proposition that the statute of limitations is merely a "procedural" requirement, which should not bar the claim of the Treasurer. The Companies distinguish the case by pointing out that the Court in Sennett was considering an "escheat procedure" in Pennsylvania (i.e., a direct separate and distinct right of action by the state) when it held that even though the substance of the state's right to escheat may be derivative, the "procedural" requirements of the statute of limitations would not bar the state. The Court in Sennett found that only a specific statutory limitation could operate as a bar against the state.

C. Discussion of Legislature's Intent Behind Mississippi's Act with Regard to § 89-12-35.

This discussion begins from the premise that the legislative intent behind Mississippi's Act, and § 89-12-35 in particular, must be considered in terms of the following two accepted rules of statutory consideration: (1) It is settled in Mississippi "... that prospective operation only will prevail, unless a contrary intention is manifested by the clearest and most positive expression." Mladinich v. Kohn, 186 So.2d 481, 484 (Miss. 1966), and (2) "[I]t is our duty to adopt a construction of the statutes which would purge the legislative purpose of any constitutional invalidity... ." Sheffield v. Reece, 201 Miss. 133, 28 So.2d 745, 749 (1947).
The Treasurer's main thrust is to refer to § 89-12-23(8) which provides:
[T]he initial report filed under this chapter shall include all items of property that would have been presumed abandoned if this chapter had been in effect since July 1, 1969, and all such property shall be subject to the provisions of this chapter.
(Emphasis added).
Then, the Treasurer contends, "[i]t is quite apparent that the intent of the legislature was for the initial report to be filed as if the chapter had been in effect since July 1, 1969. Therefore, abandoned funds owed by a life insurance corporation for more than seven (7) years shall begin with *1306 July 1, 1962. Thus, the statutes show the purpose and intent of the legislature for clear retrospective operation."
The Companies, on the other hand, insist that § 89-12-35 does not contain a clear and positive expression of retroactive application. The Companies address head-on the fact that § 89-12-23(8) seems to antedate the effective date of Mississippi's Act (July 1, 1982). The Companies first refer to the Illinois Supreme Court's analysis in Country Mutual Insurance Company v. Knight, 40 Ill.2d 423, 240 N.E.2d 612 (1968), as support that the Treasurer's theory should be rejected. The state argued that Illinois' § 16 (the exact provision as our § 89-12-35) was intended to be retroactive because the reporting provisions of Illinois' Act contained dates antedating the effective date. This argument was rejected and the following comments offered:
We think this argument ignores the purpose of the [reporting] provisions. These sections define what property must be included in initial reports to the director, but they are not directed to the problem of the bar of the statute of limitations, which is explicitly dealt with in § 16. We agree that the sections themselves are intended to have retroactive operation insofar as they make existing abandoned property subject to the act. However, since the statute of limitations will not have run prior to the effective date of the act as against claims on all such properties, it is not necessary to construe § 16 as having retroactive application to give effect to these sections.

Id., 240 N.E.2d at 614-15 (emphasis added).
Additionally, the Companies point to the California Supreme Court, which likewise concluded in Douglas Aircraft Company v. Cranston, supra, that the inclusion of reporting dates antedating the effective date of California's Act (1959) did not mean that the California Legislature intended for their version of § 16 (i.e., § 1515) to be retroactive. The reporting provision of California's Act provided that certain property, which on January 1, 1949, appeared to be held for another person, would be deemed to be subject to the provisions of the Act and included within the initial report. The California Court held:
[The reporting provision] is expressly made retroactive and makes clear that existing abandoned property is subject to the act. Such property includes major categories as to which the statute of limitations had not run on the effective date of the Act, such as obligations of financial institutions (citations omitted) and trustees (citations omitted) and other obligations upon which the statute does not begin to run until a demand has been made. Thus, it is not necessary to imply a provision removing the bar of the statute after it had run to give effect to [the reporting provision]. That subdivision defines the property that must be included in the initial report to the controller, but it is not directed to the statute of limitations, which is dealt with in § 1515. Section 1515 contains no provision retroactively removing the bar of the statute if it had run before the effective date of the Act. We cannot imply such a provision [in the reporting provision], for the rule against retroactive construction requires that "a statute should be given the least retroactive effect that its language reasonably permits." (Citations omitted).
Id., 374 P.2d at 823 (emphasis added).
Finally, the Companies refer to the case of Boswell v. South Central Bell Telephone Co., 293 Ala. 189, 301 So.2d 65 (1974), in which the Alabama Supreme Court held that § 16 of its Unclaimed Property Act is prospective only and found that the state could not demand funds to which the claims of owners were barred by the statute of limitations prior to the effective date of Alabama's Act. The Court noted Illinois's and California's decisions and stated:
We choose to follow the decisions in these two states which have considered the retroactivity of § 16 of the Act. The reasoning in those cases presents in our mind, the better view.
Id. 301 So.2d at 67.
The Alabama Supreme Court reaffirmed its position regarding the prospective operation *1307 of § 16 of Alabama's Act in Citronelle-Mobile Gathering, Inc. v. Boswell, 341 So.2d 933 (Ala. 1977).
In sum, the Companies would have the Court conclude that the Illinois, California and Alabama Courts are equally applicable to Mississippi's similar reporting provision. That is to say, that § 89-12-23(8) is expressly made retroactive for reporting purposes and not directed to the problem of the statute of limitations which is explicitly dealt with in § 89-12-35. The inclusion of reporting dates antedating the effective date simply makes it clear that existing abandoned property is subject to Mississippi's Act.

D. Constitutional Problems of Any Retroactive Application of § 89-12-35.

The chancellor recognized the constitutional problems when he refused to apply § 89-12-35 retroactively:
Any retroactive application of § 89-12-35 to lift the bar of the statute of limitations as to the funds in question is subject to constitutional infirmity. Such an application would amount to an unconstitutional revival of time-barred claims in violation of Article 4, § 97, Mississippi Constitution. Additionally, since the defense of the statute of limitations is a vested right in Mississippi, any retroactive elimination of that right by § 89-12-35 would violate the due process and equal protection provisions of the 14th Amendment to the United States Constitution.
To reiterate, Article 4, § 97 of the Mississippi Constitution provides:
The legislature shall have no power to revive any remedy which may have become barred by lapse of time, or by any statute of limitation of this state.
The Companies insist that to retroactively apply § 89-12-35 to lift the bar which attached to the funds in question prior to the effective date of Mississippi's Act would violate this prohibition. "Such an application would amount to no less than a revival (derivatively through the Treasurer) of claims already barred by the statute of limitations."
The Companies also assume that the Legislature was aware of Article 4, § 97, when it enacted § 89-12-35. Therefore, the Legislature intended a prospective application of § 89-12-35 because of the Legislature's keen awareness that if called upon to interpret a statute, the courts will construe a statute to preserve its constitutionality.
In addressing the Fourteenth Amendment to the United States Constitution in terms of a state's recognition of the defense of the statute of limitations as a vested right, the Companies quote the Illinois Supreme Court in Country Mutual, supra, as follows:
While the United States Supreme Court has held that legislation lifting the bar of the statute of limitations so as to restore a remedy lost through mere lapse of time is not a per se offense against the Fourteenth Amendment (citations omitted), it has recognized that an offense would be perpetrated if under existing local law the defense created by the running of the statute of limitations was regarded as a vested right (citations omitted).
Id., 240 N.E. at 615.
The Companies conclude this portion of the analysis by stating that this Court recognizes the vested nature of the bar created by the statute of limitations. Woodman v. Fulton, supra.
As to all of the preceding discussion on sub-issue D., the Treasurer's Brief is silent except to mention an analysis of § 89-12-23(5), which states:
If the holder of property presumed abandoned under the provisions of this chapter knows the whereabouts of the owner and if the owner's claim has not been barred by the statute of limitations, the holder shall, before filing the required report, endeavor to communicate with the owner and take reasonable steps to prevent abandonment from being presumed. The mailing of notice to the last known address of the owner by the holder shall constitute compliance with this *1308 subsection and no further act on the part of the holder shall be necessary.
(Emphasis added). The Treasurer interprets the statute to say that the holder shall file a report with the Treasurer and that the holder only has the duty to attempt communication with the owner if the holder knows of the owner's whereabouts or the claim has not been barred by the statute of limitations. However, the statute still mandates a report to the Treasurer of the presumed abandoned property, even if those factors are not met. The Treasurer argues this shows that § 89-12-23(5) and § 89-12-35 were meant to prevent the barring of the State from collection of the funds and not to release the holder from a duty to file a report with the Treasurer.
The Companies concede that this contention is partially correct since § 89-12-35 does mandate reporting even if the statute of limitations has run against an owner or payee. However, it is pointed out that since § 89-12-35 operates prospectively, reporting is still required only when the statute of limitations has barred a claim after the effective date of Mississippi's Act. Therefore, the Companies argued that the Treasurer is wrong to say that § 89-12-23(5) implies a retroactive application of § 89-12-35. For support, the Companies cite to Douglas Aircraft Co. v. Cranston, supra. In referring to a like comparison of California's similar provisions, the California Court concluded:
It does not provide, however, that the bar of the statute is inapplicable against the Controller if it had run before the effective date of the act.
Id., 374 P.2d at 822-23 (emphasis added).
The Companies conclude by suggesting that to apply § 89-12-35 retroactively to lift the bar of the statute of limitations as to the funds in question would destroy the Companies' vested rights. This would be a violation against the Fourteenth Amendment of the United States Constitution and Art. 4, § 97, of the Mississippi Constitution against reviving time-barred remedies.

E. Discussion of Need for Uniformity.

The Companies point out that the Mississippi Legislature in § 89-12-55 mandated uniformity in the construction of Mississippi's Act. Therefore, this provides "compelling authority" to construe § 89-12-35 to be prospective only since other courts which have considered the issue have found the identical provision in their state to be prospective. Country Mutual, supra, 240 N.E.2d at 615-16. Furthermore, the other two considerations in a construction of § 89-12-35 (i.e., legislative intent and constitutionality) must also be measured in terms of this mandated uniformity.
The Treasurer makes no attempt to dispute or distinguish the holdings in these cases.

CONCLUSION
It is this Court's opinion that the chancellor's final decree, declaratory judgment and injunction should be upheld and affirmed in its entirety. Thus, the funds in issue should not be subject to Mississippi's Act and the Treasurer should be permanently and perpetually enjoined from enforcing Mississippi's Act with regard to these particular funds.
The Companies (appellees) have demonstrated primarily through support from other state supreme court rulings that § 89-12-35 (§ 16 of the Uniform Act) should be given a prospective application. This is in keeping with the concept that a contrary intention is not manifested by the clearest and most positive expression and since any retroactive application would be subject to constitutional violation under the Mississippi Constitution and the United States Constitution. Finally, the statutory mandate for uniformity is further reason for a prospective construction of § 89-12-35.
Whereas, the Treasurer has cited this Court to certain cases arguing that the cases are persuasive on the point of retroactive application of § 89-12-35, this Court is in agreement with the Companies that said cases are distinguishable on all critical issues and that, in fact, no state court has yet to give § 89-12-35 (§ 16) or its counterpart retroactive application.
*1309 In sum, the Companies are not asserting a statute of limitations directly against the State in the case at bar. The rights of the State (through the Treasurer) under Mississippi's Act are derivative from the rights of owners and payees of abandoned property. The Companies' reliance on vested rights arising from the running of the statute of limitations against those owners and payees should not constitute a prohibited direct assertion of a statute of limitations against the State.
Accordingly, we affirm the decree and declaratory judgment of the Chancery Court of the First Judicial District of Hinds County, Mississippi, entered in this cause dated June 22, 1987.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and BLASS, JJ., concur.
PITTMAN, J., not participating.