568 So.2d 720 (1990)
MISSISSIPPI STATE TAX COMMISSION
v.
MOSELLE FUEL COMPANY and Laurel Fuel Company.
MISSISSIPPI STATE TAX COMMISSION
v.
FRM, INC.
Nos. 07-CA-59077, 07-CA-59079.
Supreme Court of Mississippi.
October 3, 1990.
*721 Mike C. Moore, Atty. Gen., Stephen J. Kirchmayr, Deputy Atty., Bobby R. Long, Jackson, for appellant.
Luther M. Thompson, Heidelberg & Woodliff, Jackson, for appellee.
Before HAWKINS, P.J., and ROBERTSON and BLASS, JJ.
ROBERTSON, Justice, for the court:

I.
These consolidated appeals present a question of law of the definitional species: What does the term "public service corporation" mean as it appears in our constitution which classifies property for assessment and ad valorem tax purposes? The importance of the answer to Taxpayers[1]  three privately-owned single customer natural gas pipeline companies  is the difference between having their property assessed at fifteen (15%) percent of value as opposed to thirty (30%) percent. To the State of Mississippi and the counties in which such property may be found, the importance is a possible reduction in the amount of ad valorem tax revenues they may collect from these Taxpayers as well as those similarly situated.

II.

A.
Moselle Fuel Company was incorporated on July 3, 1973. Its stock is owned by Howard E. Berry, Joan Berry and Forest Berry. At the request of South Mississippi Electric Power Association (SMEPA), Moselle constructed a pipeline through Jones and Covington Counties to transport natural gas to SMEPA's Moselle Generating Station. SMEPA was the only customer of Moselle with Moselle providing the transportation of natural gas purchased from the producers by SMEPA. Moselle Fuel Company's pipeline has been in disuse since 1983, when SMEPA shut down its Moselle Generating Station.
Laurel Fuel Company was incorporated July 18, 1976, and is owned by the same persons who own Moselle Fuel Company. Laurel's pipeline, also traversing Jones and Covington Counties, was constructed for the purpose of transporting natural gas to the Masonite Corporation's hardboard plant in Laurel. Laurel purchased the natural gas from producers and sold to Masonite at the price paid the producers. Masonite paid Laurel to transport the natural gas for a contract fee.
FRM, Inc. was incorporated April 30, 1975. It is a wholly-owned subsidiary of First Mississippi Corporation. FRM's pipeline begins at the edge of Covington County, crosses Jefferson Davis County and terminates in Lawrence County near Monticello. FRM built the pipeline to transport natural gas to the St. Regis Paper Company for use at its Roy K. Ferguson Paper Mill. St. Regis later sold the paper mill to Georgia-Pacific Corporation. FRM transported natural gas only to the paper mill with one exception in 1977 and 1978 when it transported for and sold to Transcontinental Pipeline Company on an emergency basis.
Moselle, Laurel and FRM are the Taxpayers in these consolidated appeals. Taxpayers *722 are excluded from the definition of "Public Utilities" pursuant to Miss. Code Ann. § 77-11-301 et seq. (Supp. 1990). The Public Service Commission has no jurisdiction over Taxpayers except to inspect their lines for safety purposes. None of the companies is required to have a certificate of public convenience and necessity from the Public Service Commission and, except for their respective charters of incorporation, none is required to obtain any other franchise, license or certificate from the State of Mississippi in order to construct or operate their pipelines. Additionally, none has ever exercised the power of eminent domain to take property over which to construct its pipelines. Instead, each negotiated with the individual land owners for easements and, when unsuccessful through this process, routed its pipeline around the property.

B.
This taxation dispute began in 1984 when the Mississippi State Tax Commission ruled that for the tax year 1985 the property of each of these Taxpayers was subject to the Commission's assessment authority and assessed the property of each at thirty (30%) percent of true value. The Commission assessed Moselle's and Laurel's property at $18,000.00 and $45,000.00, respectively, for the year 1985. The Commission assessed FRM's property at $349,050.00. Prior to 1984, none of these Taxpayers had filed schedules with the Commission reporting its property. Miss. Code Ann. § 27-35-303 (1972).
On September 30, 1985, Moselle and Laurel together, and FRM, Inc., acting independently, filed their objections to assessment. More specifically, Taxpayers argued that the Commission had erroneously designated their intrastate, intercounty natural gas pipelines as Class IV property pursuant to Article 4, Section 112 of the Mississippi Constitution (as amended 1982).[2]
On November 20, 1985, the Commission confirmed its original assessments and denied the objections. On December 10, 1985, Taxpayers filed their Petition for Appeal and Review with the Circuit Court of the First Judicial District of Hinds County.
On January 21, 1988, the Circuit Court reversed and held that Taxpayers' properties are not Class IV public utility property, but instead are Class II real property. The Circuit Court further held, for ad valorem tax purposes, that Taxpayers are not "public service corporations" and that thus, their pipeline properties should be assessed at fifteen (15%) percent of true value.
On February 11, 1988, the Commission perfected its appeal in both cases.

III.
Our question is whether the Circuit Court was correct when it held that these three Taxpayers are not "public service corporations" within the meaning and contemplation of Miss. Const. Art. 4, § 112 (as amended), and its implementing statute, Miss. Code Ann. §§ 27-35-301 et seq. (Supp. 1990). Our focus is upon the constitutional language, for the meaning given the term public service corporation in the statutes must perforce conform to constitutional mandate.
In 1982 the people amended Section 112 of the Constitution to authorize the discriminatory classification of taxable property for purposes of valuation and assessment. In 1986 the people again amended Section 112, but without effect on today's question. Section 112, in relevant part, now reads
For purposes of assessment for ad valorem taxes, taxable property shall be divided into five (5) classes and shall be assessed at a percentage of its true value as follows:
* * * * * *
Class II. All other real property, except for real property included in Class I or IV, at fifteen percent (15%) of true value.
* * * * * *

*723 Class IV. Public utility property, which is property owned or used by public service corporations required by general laws to be appraised and assessed by the state or the county, excluding railroad and airline property and motor vehicles, at thirty percent (30%) of true value.
* * * * * *
The phrase "public service corporations" in the language quoted above was central to the litigation before the Circuit Court, and we review that Court's decision de novo. Miss. Code Ann. § 27-35-163 (1972). The question is one of law and in such contexts we have always eschewed any notion of deference to the Court below. See, e.g., Planters Bank & Trust Co. v. Sklar, 555 So.2d 1024, 1028 (Miss. 1990); Cole v. National Life Insurance Co., 549 So.2d 1301, 1303 (Miss. 1989); Boggs v. Eaton, 379 So.2d 520, 522 (Miss. 1980); Mississippi State Highway Commission v. Dixie Contractors, Inc., 375 So.2d 1202, 1206 (Miss. 1979); S & A Realty Co. v. Hilburn, 249 So.2d 379, 382 (Miss. 1971); see also Pullman-Standard, a Division of Pullman, Inc. v. Swift, 456 U.S. 273, 287, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66, 79 (1982).
There is another context, institutional in nature, generating policy considerations arguably at loggerheads with what we have just said. We have before us a matter of constitutional and statutory interpretation committed initially to an administrative agency, here the State Tax Commission. Notwithstanding our ordinarily de novo review of questions of law, we have accepted an obligation of deference to agency interpretation and practice in areas of administration by law committed to their responsibility, expertise and concern, although no one has ever articulated the precise content of that duty of deference. See, e.g., Grant Center Hospital of Mississippi, Inc. v. Health Group of Jackson, Mississippi, Inc. d/b/a Riverside Hospital, 528 So.2d 804, 808 (Miss. 1988); General Motors Corp. v. Mississippi State Tax Commission, 510 So.2d 498, 502 (Miss. 1987); M.E.S.C. v. Philadelphia M.S.S.D., 437 So.2d 388, 394 n. 6 and 398 n. 13 (Miss. 1983); Gully v. Jackson International Co., 165 Miss. 103, 145 So. 905, 907 (1933); see also Red Lion Broadcasting Co. v. Federal Communications Commission, 395 U.S. 367, 380-81, 89 S.Ct. 1794, 1801-02, 23 L.Ed.2d 371, 383-84 (1969). Whatever that duty, it has no material force where the agency interpretation is contrary to the statutory (or, in this case, constitutional) language. See, e.g., Mississippi State Tax Commission v. Dyer Investment Co., Inc., 507 So.2d 1287, 1289 (Miss. 1987); Universal Manufacturing Corp. v. Brady, 320 So.2d 784, 786 (Miss. 1975).
In the end our search is of the law as it is given us by the state. Rebelwood, Ltd. v. Hinds County, Miss., 544 So.2d 1356, 1363 (Miss. 1989); General Motors Corp. v. State Tax Commission, 510 So.2d 498, 500 (Miss. 1987). We accept that the positive law may define a term or phrase in a manner not necessarily consonant with common understanding, see General Motors Corp. v. Mississippi State Tax Commission, 510 So.2d at 500, although when it does so it must do so with relative certainty. We do not doubt, for example, the power of the state, acting through its legislature in the case of statutes and through the people in the case of the constitution, to define "public service corporation" as any corporation owning property in two or more counties. The question is whether the state has done so.
Examining Constitutional Section 112 we find that the people have not told us what the term "public service corporation" means. We examine the statutes implementing Section 112 and again find no definition of "public service corporation" has been afforded, and from this Taxpayers argue that common law and technical definitions control.
The law does tell us what a "public utility" is. Under the laws of this State, Miss. Code Ann. § 77-3-3 (Supp. 1989), a public utility includes a pipeline which sells gas to the public for compensation. Before a pipeline can act as a public utility it must obtain a certificate of public convenience and necessity. Miss. Code Ann. § 77-3-11 (Supp. 1989). The terms "public utility" *724 and "public service corporation" seem synonymous. It would be hard to explain to the ordinary non-law-trained citizen how an entity that is not a "public utility" might nevertheless be a "public service corporation."
Neither Moselle, Laurel nor FRM sells to the public: each has but a lone private customer to whom it has heretofore been under contract.[3] None is a public utility. None holds a certificate of public convenience and necessity. It would seem to follow on linguistic as well as legal principle that none is a public service corporation whose property falls within amended Section 112's Class IV.
The Commission's argument in response is historical, then definitional. On its face a privately owned natural gas pipeline company serving a single (or a handful of) private customer(s) that is virtually unregulated and lacks many of the indicia of "publicness" may not seem to be a public service corporation. Notwithstanding, the Commission argues that it and the legislature have nevertheless regarded such corporations as public service corporations  at least since 1932. We are then treated to nigh unto a century's worth of ad valorem tax history culminating in the indisputable and quite convenient fact that the Commission has long been charged with the responsibility for assessing corporate property "not situated wholly in one county." The Commission points to language which has been in the Constitution since 1890  and which remains in the 1982 and 1986 amendments to Section 112  to the effect that
... the legislature may provide for a special mode of valuation and assessment for railroads, and railroad and other corporate property, or for a particular species of property belonging to persons, corporations, or associations not situated wholly in one county.
No doubt this authority is the product of wisdom, for economic reality suggests different approaches to the valuation of different types of property depending upon a variety of factors, see, e.g., Rebelwood, Ltd. v. Hinds County, Miss., 544 So.2d at 1360-1365.
What the Commission ignores is the very next sentence of Section 112 which originally read, "But all such property shall be assessed at its value," and which now reads "All such property shall be assessed in proportion to its value according to its class." The mode of assessment is independent of the classification system imposed by amended Section 112. In other words, the "mode" of assessment, within the Section 112 language the Commission relies upon, refers to the manner in which the assessors ascertain true value. But that is not the question in this case. The question before us is what the assessing authority is to do after true value has been ascertained by the statutorily authorized mode. The Constitution gives a simple answer. If the property is public service corporation property, it is assessed at thirty (30%) percent of true value while otherwise it is assessed at only fifteen (15%) percent of true value.
It is certainly true historically  for at least the last thirty years or more  in the case of properties committed to its authority for valuation and assessment purposes, the Commission has employed an assessment ratio of thirty (30%) percent of true value. The Commission used this ratio after it had determined the mode of valuation and after it had found the true value of the property. It strikes us somewhat disingenuous for the Commission to suggest that it employed its thirty (30%) percent assessment ratio out of a sense of duty to utilize special "modes" for assessing property when in fact what the Commission was doing during these years was respecting the first command of Section 112  as it originally read  that taxation shall be uniform and equal throughout the state. See Fondren v. State Tax Commission, 350 So.2d 1329, 1334 (Miss. 1977); and State Tax Commission v. Fondren, 387 So.2d 712, 718-19 (Miss. 1980). In point of fact, the Commission was at the time urging all taxing authorities, particularly the counties, to use a thirty (30%) percent assessment *725 ratio, although its success in these urgings was at best spotty until the 1980's.
All of this aside, the Commission's argument in the end is definitional. We are simply told that the term "public service corporation" includes every natural gas pipeline in this state that crosses a county line and this wholly without regard to whether the Taxpayer serves the public in the ordinary sense of public service corporations or public utilities. For ad valorem tax purposes, we are told the fact is irrelevant that the Taxpayer may provide only private, contract transportation of natural gas. The argument defines common sense and the common understanding of the constitutional language, and we reject it.
One final point is whether property is to be classified by reference to the authority of its owner or by its use. For example, FRM was incorporated in 1975. Its Articles of Incorporation specifically set forth the purpose of its incorporation and stated in pertinent part:
To acquire by purchase of otherwise rights of way for natural gas, oil and petroleum pipelines, and to construct and maintain such pipelines for the carriage and transportation of natural gas, oil, petroleum products on its own behalf and for hire; and in general to do all things incidental to the business of acquiring and constructing pipelines and transporting natural gas, oil and petroleum in pipelines on its own behalf; for hire or as broker for agent.
To be sure this is a factor to be considered but by no means the exclusive factor. We are more concerned with Taxpayers' mode of operation and the nature and character of the service it is in fact providing. See Hinds County Water Co. v. Scanlon, 159 Miss. 757, 770-72, 132 So. 567, 570 (1931).
In sum, we hold that the property whose valuation and assessment are at issue is not "public utility property which is property owned or used by public service corporations" for the reason that these three Taxpayers are not public service corporations. From this holding it follows that the property in issue is Class II real property which via constitutional mandate shall be assessed at fifteen (15%) percent of true value. This being the self-executing mandate of the constitution, it follows that no statute may change it. The judgment of the Circuit Court in each of these cases is affirmed.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., PRATHER, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
NOTES
[1] See Rule 28(d), Miss.Sup.Ct.Rules.
[2] M-L and FRM also alleged their actual value had been wrongly appraised because of their obsolescence. However, on appeal to the Circuit Court neither pursued this objection and it is not before this Court on this appeal.
[3] The fact that FRM once had a second contract customer is of no moment.