601 So.2d 860 (1992)
Michael BOWEN and Gail Bowen, d/b/a Double B Gin
v.
Howard FLAHERTY and Carrie Flaherty.
No. 89-CA-0498.
Supreme Court of Mississippi.
June 10, 1992.
*861 Charles D. Thomas, Pontotoc, for appellant.
Roger H. McMillin, Jr., Sumners Carter & McMillin, New Albany, for appellee.
EN BANC.
ROBERTSON, Justice, for the Court:

I.
This case calls before us the meaning of the statute of limitations embodied in our decade-old "right to farm" statute. Plaintiff lives in rural Northeast Mississippi and has sued the operator of a nearby cotton gin for abatement of a nuisance and for damages caused thereby. Defendants argue their gin is an agricultural operation and that the matter is precluded by the one-year limitations statute. The Chancery Court denied the defense.
We reverse.

II.
Howard Flaherty, seventy-seven, is a chronic asthmatic. He and Carrie Flaherty, seventy-three, live in the Randolph Community on Highway 9 Southwest in Pontotoc County. Flaherty retired as a camp ranger at Camp Yocona in the 1970's, and in 1978, bought and built upon the land on which he now lives.
Michael Bowen and Gail Bowen own and operate a cotton gin  known as the Double B Gin  some three hundred to four hundred feet from the Flahertys' home. Michael's father built the gin in 1980. Howard Flaherty learned of these plans as early as January of 1980 and, sensing that the ginning process would cause him problems, complained to the elder Bowen, who is now deceased. These protests were to no avail and the gin was completed and began operating for the 1980 harvest season.
Flaherty has complained regularly to the U.S. Environmental Protection Agency, to the State Bureau of Pollution Control, and ultimately to his United States Senator. There is evidence that regulatory authorities have responded by inspecting the gin with more than usual frequency to assure that it operates within the law. Double B Gin received a state permit in 1981, and that permit was renewed in 1984 and in 1987.
David Louis Bowen built the gin in 1980 at a cost of some $640,000.00, not including labor. Through early 1983, Bowen had spent some $18,000.00 on pollution control equipment, not including installation. David Bowen died in March of 1983. There is evidence the Bowens "modernized" the gin in its third year of operation, and new pollution controls were installed in 1984 or 1985.
Double B Gin now serves the public in Southwest Pontotoc County and the surrounding area. Michael Bowen farms himself, and approximately ten percent of Double B's business is ginning cotton Bowen grows. In 1985 and 1986, Double B ginned approximately 6,000 bales of cotton. The year 1987 was a much better crop year, and Double B ginned some 9,000 bales.
Throughout all of this time, Howard Flaherty experienced considerable health problems attributable to the nearby ginning operation's effect upon his asthmatic condition. Finally, on October 24, 1986, Howard and his wife, Carrie, brought the present action in the Chancery Court of Pontotoc County, charging that the gin was a private nuisance and that it interfered with their quiet and peaceful enjoyment of their property by reason of its discharge of *862 large quantities of lint, dust, fibers and other residue. Howard Flaherty also cited his asthmatic condition and demanded damages and abatement of the nuisance. The Bowens answered and in due course pled the statute of limitations. On September 26, 1988, the Chancery Court adjudged the merits, first, denying the Bowens' limitation defense and thereafter assessing damages and ordering abatement of the nuisance.
The Bowens appeal.

III.

A.
A private nuisance is a nontrespassory invasion of another's interest in the use and enjoyment of his property. One landowner may not use his land so as to unreasonably annoy, inconvenience, or harm others. See Young v. Weaver, 202 Miss. 291, 32 So.2d 202 (1947); Restatement (Second) of Torts § 821B (1979). Though nuisance actions are fact-sensitive and fact-intensive, it is easy to see a cotton gin on occasion may flunk the test. Shaw v. Owen, 229 Miss. 126, 90 So.2d 179 (1956). Where, as here, a party seriously pleads a limitations defense, he concedes pro tanto a claim has been stated. All we say here assumes the Double B Gin was a nuisance to the Flahertys.
The Legislature, effective July 1, 1980, placed a one-year limitation on nuisance actions against agricultural operations. The general rule reads:
In any nuisance action, public or private, against an agricultural operation, proof that said agricultural operation has existed for one (1) year or more is an absolute defense to such action, if the conditions or circumstances alleged to constitute a nuisance have existed substantially unchanged since the established date of operation.
Miss. Code Ann. § 95-3-29(1) (Supp. 1991).
The Flahertys say this act does not affect their suit. They tell us preliminarily we ought recall that statutes in derogation of the common law are to be strictly construed, citing Quick Shops of Mississippi, Inc. v. Bruce, 232 So.2d 351, 353-54 (Miss. 1970). Assuming arguendo it may apply, this principle, though stated with frequency in a former era, has fallen into disuse, no doubt as we increasingly sensed it made no sense and that statutes such as these before us are to be read reasonably. See McCluskey v. Thompson, 363 So.2d 256, 261-62 (Miss. 1978). We have no more prerogative to be grudging in acceptance of the legislative will here than in any other context within its constitutional competence.

B.
The question is whether the Bowens' gin is an agricultural operation. The act defines the term.
"Agricultural operation" includes, without limitation, any facility for the production and processing of crops, livestock, farm-raised fish and fish products, livestock products, and poultry or poultry products for commercial or industrial purposes.
Miss. Code Ann. § 95-3-29(2)(a) (Supp. 1991). The Flahertys struggle mightily to convince us the offending gin is not an agricultural operation and, hence, not within the one-year statute. They say the Double B Gin is not a facility "for the production and processing of crops, ... ." [Emphasis supplied] The gin does not "produce" any crops and, by reason of the statute's use of the conjunctive "and," its language excludes facilities "involved solely in some intermediate stage of simply `processing' agricultural commodities," or so we are told. Only a lawyer would make such an argument.
Even if we concede the disjunctive "or" would have been a better legislative choice of connector, we find a gin easily within the statute. Granted, the Legislature had the competence to define "agricultural operation" as it saw fit.[1]See e.g., Mississippi *863 State Tax Commission v. Moselle Fuel Co., 568 So.2d 720, 723 (Miss. 1990). No operation does everything, and we think it important that the language employed begins with "includes, without limitation, any facility... ." If the law be limited to those facilities "for the production and processing," the act would do very little. A bit of reflection and we see the sort of facilities likely to create a nuisance likely do but one of the two, production or processing, but seldom both. If we read the statute as the Flahertys suggest, we substantially obliterate its apparent coverage and ignore that, embedded within the language the Legislature has provided, is a rational policy judgment that farming operations are important to this state's welfare and ought be protected from nuisance actions once they have been in existence and operation for the prescribed period of time. Besides, as the Bowens point out, there is a certain sense in which the Double B Gin does produce, it produces "cotton bales, as well as cotton seed," and the fact that the entire production does not take place there hardly eviscerates coverage.
Now we are pointed to another conjunctive, the "and" before "poultry." On this view, to be an "agricultural operation" a facility must at once produce and process crops and livestock and farm-raised fish and fish products and livestock products and poultry or poultry products. It is a sufficient answer that no rule of grammar or construction compels unintelligence.
Without further ado, we hold the Bowens' cotton gin an "agricultural operation" within Section 95-3-29(2)(a).

C.
Notwithstanding, the Chancery Court held 1980 was not the beginning date for the running of the statute. Rather, the Court found that the Bowens had expanded their operation and ruled the statutory language provided that, from the date of expansion, the statute begins to run anew. The language at issue reads:
If the physical facilities of the agricultural operation are subsequently expanded, the established date of operation for each expansion is deemed to be a separate and independent "established date of operation" established as of the date of commencement of the expanded operation... .
Miss. Code Ann. § 95-3-29(2)(b) (Supp. 1991).
In this regard, the Chancery Court held that there was an expanded date of operation in the Fall of 1987.
It is the opinion of this Court, based on the testimony, that the expanded date of operation in this case occurred in the Fall of 1987, when it is undisputed that the volume of ginning operations was increased by two-thirds [sic] over the previous years. This is a substantial change, and under a strict reading of the statute, would make October '87 the beginning date for an established date of operation.
This application of the act is clearly erroneous. The only thing that happened in 1987 was the Double B Gin did a lot more business than it had in the two previous years  ginning some 6,000 bales in 1985 and 1986, with an increase to some 9,000 bales of cotton in 1987. No evidence before us suggests any change of consequence in the physical structure of the gin or in the types of operations engaged in. Pollution control improvements made in 1985 certainly do not fill the bill. The only physical changes the record suggests have ever been made in the Double B Gin were those in 1983 and 1984 that "modernized" the gin, but those are clearly outside the one-year period, which by law we compute going backwards from October 24, 1986. The record contains not a word that, after October 24, 1985, the Bowens did anything having in law power to reset the limitations clock.
REVERSED AND RENDERED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, PITTMAN and BANKS, JJ., concur.
McRAE, J., dissents with separate written opinion.
*864 McRAE, Justice, dissenting:
I dissent because I think the majority opinion stresses one phrase in the applicable statute and ignores the rest. In reference to the question of whether the Bowens' gin is an agricultural operation, the majority placed great emphasis on the conjunctive "and" in the phrase "production and processing." However, amidst the commas and conjunctions lie several additional terms that collectively define the term "agricultural operation." The statute states:
"Agricultural operation" includes, without limitation, any facility for the production and processing of crops, livestock, farm-raised fish and fish products, livestock products, and poultry or poultry products for commercial or industrial purposes.
(emphasis added)
This writer did not write the statute; he is simply required to interpret it. The legislators did not use the disjunctive "or;" therefore, those terms preceding "and poultry ..." must combine into one before an "agriculatural operation" exists as defined by the legislature. Had the legislators intended for the terms to stand independently, they would have used the disjunctive "or." Since they failed to do so, I, like the chancellor, would find that this is not an "agriculatural operation."
NOTES
[1] Compare the somewhat different definition in a proposed Model Right to Farm Statute in Grossman and Fischer, Protecting The Right To Farm: Statutory Limits On Nuisance Actions Against The Farmer, 1983 Wis.L.Rev. 95, 163-64 (1983).