641 So.2d 1226 (1994)
Ed BUELOW, Jr., Chairman and Commissioner of Revenue for the Mississippi State Tax Commission
v.
KEMP COMPANY, INC.
No. 93-CC-00175.
Supreme Court of Mississippi.
August 18, 1994.
*1227 Bobby R. Long, Brenda G. Cameron, MS State Tax Com'n, Jackson, for appellant.
Richard D. Foxworth, J. Leigh Kennington Berry, Columbia, for appellee.
Before DAN M. LEE, P.J. and PITTMAN and JAMES L. ROBERTS Jr., JJ.
DAN M. LEE, Presiding Justice, for the Court:

STATEMENT OF THE CASE
On May 21, 1986, after exhausting all administrative remedies, Kemp Company, Incorporated (Kemp), paid $13,921.14 to the Mississippi State Tax Commission in satisfaction of an assessment levied in an order dated April 19, 1986. The assessment was for $12,382.95 in unpaid taxes and $1,538.19 interest, and arose from a dispute over whether some of Kemp's pit pumping activities were taxable at the full rate or at a special reduced rate for qualified drilling contractors. On June 30, 1986, Kemp filed a complaint in the Chancery Court of Marion County alleging that the taxes were assessed in contravention of the governing statutes and seeking a refund as authorized by Miss. Code Ann. § 27-65-47 (1972). The lower court ruled in favor of Kemp and the Commission appealed, raising the following issues:
I. PIT PUMPING IS TAXABLE UNDER MISS. CODE ANN. § 27-65-23 (1972).
II. IF THE QUALIFICATIONS OF MISS. CODE ANN. § 27-65-21 (1972) ARE MET, THEN PIT PUMPING IS TAXABLE UNDER § 27-65-21.
III. THE COMMISSION'S ASSESSMENT OF KEMP'S PIT PUMPING CONTRACTS UNDER MISS. CODE ANN. § 27-65-23 (1972) IS PROPER UNDER THE SALES AND USE TAX RULES.
IV. THE COMMISSION CORRECTLY ASSESSED THE TAX ON THE AMOUNTS COLLECTED BY KEMP FROM ITS CUSTOMERS AS TAXES.
Because the lower court erroneously interpreted the governing statutes, we must reverse and render judgment in favor of the Commission.

STATEMENT OF THE FACTS
Certain background information is critical to a meaningful understanding of the facts in this case. Prior to this dispute, Kemp performed, for hire, a variety of functions related to the production of oil and gas in Mississippi. Pit pumping, one of these activities, involves removal of waste fluids from the well site. The legislature has enacted two taxation statutes that may impact pit pumpers such as Kemp. The first, Miss. Code Ann. § 27-65-23 (1972), is a general statute that imposes a 6% tax on oil field "services." The second, Miss. Code Ann. § 27-65-21 (1972), imposes a 3 1/2% tax on services provided in conjunction with a qualified drilling contract.[1] Kemp provided pit pumping services both at projects where it held the drilling contract and at locations where other parties contracted to drill. The Commission determined that income derived under the latter arrangement was taxable at the full rate.
The parties stipulated the following facts:

*1228 In July, 1985, the State Tax Commission of Mississippi conducted an audit of Plaintiff's [Kemp's] business for the period beginning January 1, 1982, and ending April 30, 1985. On August 5, 1985, the Commission rendered its audit report and on August 20, 1985, the Commission made its Assessment of Sales Tax against Plaintiff in the sum of $13,395.90. This total additional assessment was comprised of additional taxes in the sum of $10,505.11, and interest in the sum of $2,890.79. Plaintiff appealed this assessment to the Board of Review of the State Tax Commission. On November 19, 1985, the State Tax Commission revised its audit report by reducing the total assessment to $12,382.95, and on December 12, 1985, the Board of Review rendered its Order No. 2655 reducing the assessment to $12,382.95. The reason for the decrease was based upon the Board of Review's reclassification to two and one-half percent of those contracts where Kemp held the contract for drilling and therefore, performed the pit pumping in conjunction with a qualified contract for drilling to 2 1/2%.
On December 19, 1985, Plaintiff appealed the said decision of the Board of Review to the Commission, and on April 9, 1986, made an assessment against Plaintiff in the sum of $13,921.14, being an assessment for taxes in the sum of $12,382.95, plus interest through April 9, 1986, in the sum of $1,538.19. The said assessment was paid in full by Plaintiff on May 21, 1986.
On June 30, 1986, Kemp Company filed a complaint in the Chancery Court of Marion County seeking a refund of the taxes assessed pursuant to § 27-65-47 Miss. Code Ann. (1972). On the basis of the parties' briefs and the extensive stipulation partially quoted above, the lower court held Kemp's business activities taxable at the lower rate provided in § 27-65-21 and the Commission appealed.

DISCUSSION
Despite the multiple errors assigned by the Commission, the only issue on appeal is whether a contract solely for pit pumping is taxable under the reduced rate provided for in § 27-65-21 or the higher rate established in § 27-65-21.
Section 27-65-21 provides for taxation of income with respect to contracts for drilling, redrilling or working over an oil well at a reduced rate. Specifically, this section provides, in pertinent part:
(2) Upon every person engaging or continuing in this state in the business of contracting or performing a contract or redrilling, or working over, or of drilling an oil well or a gas well, regardless of whether such well is productive or nonproductive, for any valuable consideration, there is hereby levied, assessed and shall be collected a tax equal to two and one-half percent [now 3 1/2%] of the total contract price or compensation received when such compensation exceeds Ten Thousand Dollars ($10,000.00).
(emphasis added).
Section 27-65-23 imposes a six percent tax on a variety of activities including:
Services performed in connection with geophysical surveying, exploring, developing, drilling, producing, distributing, or testing of oil, gas, water and other mineral resources.
The Commission contends that the pit pumping contracts in question were "services performed in connection with ... drilling" and therefore subject to the higher tax rate of § 27-65-23. Kemp counters by asserting that, "Pit pumping is not a service performed in connection with drilling, it is part of the drilling itself." Thus, both parties argue that the "plain language" of the statutes supports their respective positions.
This question has not been addressed previously by the Court but it appears that the statutes, when read in pari materia, favor the position of the Commission. The Commission advances the following as the usual meaning of "drilling" within the industry: the "act of boring a hole through which oil and/or gas may be produced if encountered in commercial quantities," citing 8 Williams and Myers, Manual of Oil and Gas Terms (1972). Removal of waste fluids does not fall within this definition. This Court presumes that words used in statutes were *1229 intended to convey their usual meaning absent some indication to the contrary. See Mississippi State Tax Comm'n v. Moselle Fuel Co., 568 So.2d 720 (Miss. 1990).
One need look no further than the statutes we are asked to interpret for compelling evidence that the legislature did not intend a more expansive definition of "drilling." Section 27-65-23 specifically subjects "services performed in connection with drilling" to the higher tax rate. Clearly, there would be no need to tax such services separately if they were intended to fall within a broad definition of "drilling". Thus, the ordinary meaning of the statutory language in question clearly excludes contracts solely for pit pumping from the favorable treatment established in § 27-65-21.
The next question is whether some compelling reason exists for construing these statutes other than according to their apparent plain language. By way of a factual predicate, it appears from the record and briefs that two alternatives exist for procuring or reworking an oil well. The first method, known as a turnkey drilling contract is statutorily defined as:
A contract for the drilling of a well which requires the driller to drill a well, and if commercial production is obtained, to equip the well to such stage that the lessee or operator may turn a valve and the oil will flow into a tank.
Miss. Code Ann. § 27-65-21 (1990).
According to the record, a turnkey contractor will typically provide the following services: (i) building the location or pad for the actual drilling operation, (ii) providing drilling fluid, (iii) setting the surface casing, (iv) actually drilling the hole, (v) logging the well, (vi) plugging the well if nonproductive, (vii) pumping the pits, and (viii) cleanup of the location. The second method involves the owner of the project contracting directly with different entities to secure the various necessary services. When business is conducted under the first alternative, the turnkey contractor is subject to the lower tax rate for the total contract amount. This is mandated by the language of § 27-65-21(2) which provides:
"Total contract price or compensation received"  As related to oil and gas well contractors, shall include amounts received as compensation for all costs of performing a turnkey drilling contract[.]
Thus, it is clear that the legislature has chosen to tax income from some services, including pit pumping, at a lower rate when performed in conjunction with a contract to drill, redrill or work over an oil well. Under the present scheme, the same pumping activity would be subject to a higher tax rate if the owner or operator of the project contracted directly with party other than the driller to obtain the service. Kemp's contention is that this disparate treatment amounts to a violation of the Equal Protection Clause of the Fourteenth Amendment. This contention is without merit. Where no fundamental right or suspect classification is involved, the state may treat citizens differently so long as a rational basis exists for the distinction. See Mississippi High School Activities Ass'n v. Coleman, 631 So.2d 768, 776 (Miss. 1994).
In the present case, at least one rational basis exists for the disparate treatment. The administrative burden of allocating proceeds from turnkey contracts between drilling and non-drilling functions would be formidable. Apparently the legislature elected not to attempt to do so, instead opting for the simpler application of the lower rate to the entire contract price. Where the exact amount of revenue allocable to non-drilling services is readily ascertainable, however, as where the sole object of the parties' association is to procure and provide pit pumping service, no reason exists to charge other than the full rate. The fiscal wisdom (or lack thereof) of such a decision is for the legislature to evaluate.
Finally, both below and on appeal, Kemp relies extensively on subsection (3) of § 27-65-21 which states:
When the work to be performed under any contract is sublet by the prime contractor to different persons, or in separate contracts to the same persons, each such subcontractor performing any part of said work shall be liable for the amount of the tax which accrues on account of the work performed by such person when the tax *1230 heretofore imposed has not been paid upon the whole contract by the prime contractor.
When a person engaged in any business on which a tax is levied in Section 27-65-23, Mississippi Code of 1972, also qualifies as a contractor, and contracts with the owner of any project to perform any services in excess of Ten Thousand Dollars ($10,000.00) herein taxed, such person shall pay the tax imposed by this Section 27-65-23, Mississippi Code of 1972.
Kemp contends that its status as a "contractor" is established by the stipulation of the parties, and that, therefore, the second paragraph of this section requires all contracts entered by Kemp to be taxed at the lower rate. The lower court agreed with this argument, holding:
4. The parties have stipulated that "pit pumping is a necessary part and integral part of the drilling and reworking of the wells and, therefore "pit pumping" must be considered as drilling or reworking under Section 27-65-21 of Mississippi Code of 1972.
.....
6. It is undisputed that the Plaintiff is a contractor within the meaning of Section 27-65-21, Mississippi Code of 1972 and that contractual activities performed by Plaintiff involved contracts in excess of Ten Thousand Dollars ($10,000) each.
As the Commission points out, however, the term "contractor" can only refer to a party who holds a qualified drilling contract for the site where the auxiliary service is performed. Qualifying as a "contractor" for one job does not carry over to other jobs engaged in by the same taxpayer. Reading the statutes together, it appears that the legislature intended different tax consequences for activities performed in conjunction with a drilling contract. The lower court's ruling effectively erases the differences mandated by the legislature for taxpayers who have drilled in the past regardless of the connection to any current drilling. This was reversible error.
Furthermore, the relevant portion of the stipulation clearly does not bind the Commission to the position that Kemp was a "contractor" with respect to the activities which were taxed under § 21-65-23:
At all times, including the period beginning January 1, 1982, and ending April 30, 1985, Plaintiff was a contractor (as identified in Section 27-65-21 of Mississippi Code of 1972, as amended) engaging in this state in the business of contracting or performing a contract or redrilling, or working over, or of drilling an oil well or a gas well, regardless of whether such well was productive or nonproductive, for a valuable consideration. Additionally, the Plaintiff provided other contractual services such as pit pumping. However, pit pumping was not always performed by Plaintiff in conjunction with a qualified drilling contract. Instead, pit pumping was the only service required of Kemp under certain contracts. The Commission assessed the additional tax against Kemp based upon those contracts which were for pit pumping and were not performed in conjunction with a qualified drilling contract.

CONCLUSION
The lower court erred in adopting Kemp's construction of the relevant statutes and must be reversed. The Commission was entitled to judgment in its favor denying Kemp's action to recover taxes legally assessed and paid on May 21, 1986, and the same is hereby rendered by this Court.
REVERSED AND JUDGMENT RENDERED HERE DENYING REFUND TO KEMP COMPANY, INC.
HAWKINS, C.J., PRATHER, P.J., and SULLIVAN, PITTMAN, BANKS, McRAE, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
NOTES
[1] At the time this dispute arose, the higher rate was five percent and the lower was two and one-half percent.