**TRAVELERS EXPRESS COMPANY,
INC., a Minnesota corporation,
Plaintiff and Respondent,**

v.

**STATE of Utah, Edward T. Alter, in his
capacity as Treasurer of the State of
Utah, and Val Oveson, in his capacity
as Auditor of the State of Utah, Defend-
ants and Appellants.**

No. 19216.

Supreme Court of Utah.

Jan. 15, 1987.

Rehearing Denied Feb. 9, 1987.

David L. Wilkinson, Atty. Gen., Joseph P.
McCarthy, Salt Lake City, for defendants
and appellants.

L. Ridd Larson, Douglas Matsumori, Salt
Lake City, for plaintiff and respondent.

HOWE, Justice:

This action was brought for a declaratory judgment as to whether certain uncashed money orders issued by the plaintiff, Travelers Express Company, Inc., were subject to the Utah Uniform Disposition of Unclaimed Property Act, U.C.A., 1953, Title 78, Chapter 44 (repealed and reenacted 1983 Utah Laws ch. 164). Summary judgment was entered by the trial court in favor of the plaintiff. The defendants, the State of Utah, the State Treasurer, and the State Auditor, bring this appeal.

The plaintiff is a Minnesota corporation engaged in the business of selling money orders throughout the United States. It has been selling its money orders in Utah, either directly or through its predecessor, since 1959. While most of these money orders have been presented for payment and payment has been made, some of them have not been cashed, presumably due to their loss or destruction or because of neglect by the purchaser or payee of the instrument. In response to a demand made upon the plaintiff by the State Treasurer, the plaintiff first filed a report on October 31, 1977, under protest, as to the amounts of all uncashed money orders. Subsequent reports were filed by the plaintiff annually through 1982. The plaintiff paid to the Treasurer, under protest, the sums reported and commenced this action to determine whether the uncashed money orders were subject to the Utah Uniform Disposition of Unclaimed Property Act and to seek refund of the amounts paid.

The basis for the trial court's ruling in favor of the plaintiff was that any action brought by the purchaser or payee of a money order to enforce its payment would be barred by our six-year statute of limitations, U.C.A., 1953, § 78–12–23, dealing with actions on written contracts; consequently, at the end of seven years when the plaintiff was required by the Act to report and pay over any sum representing uncashed money orders, there was nothing legally owing. The sole question for our determination on this appeal is, What ef-

fect, if any, does the running of the statute of limitations against the purchaser or payee of a money order have on the right of the State to enforce payment to it under the Act? For the purposes of our decision, we assume, but do not decide, that section 78–12–23 applies to money orders and that the statute commences to run when the instrument is purchased. *But see Bank of America National Trust & Savings Association v. Cranston,* 252 Cal.App.2d 208, 60 Cal.Rptr. 336 (1967).

Utah adopted its version of the Uniform Disposition of Unclaimed Property Act in 1957. In general, it provides for the payment to the State Treasurer of tangible and intangible personal property which is "presumed abandoned" because it has gone unclaimed by its rightful owner after the expiration of time periods ranging generally from seven years to fifteen years. To facilitate collection, the Act provides for reports to be made to the State Treasurer by holders of any such abandoned property and the payment of such property to the Treasurer. Any person claiming an interest in the property may thereafter file a claim to it with the Treasurer, and "no statute of limitations shall bar the filing of a claim." § 78–44–18. As succinctly stated by Justice Traynor in *Douglas Aircraft Co. v. Cranston,* 58 Cal.2d 462, 374 P.2d 819, 24 Cal.Rptr. 851, (1962):

> The objectives of the Act are to protect unknown owners by locating them and restoring their property to them and to give the State rather than the holders of unclaimed property the benefit of the use of it, most of which experience shows will never be claimed.

The Uniform Act in its section 16 provided:

> The expiration of any period of time specified by statute or court order, during which an action or proceeding may be commenced or enforced to obtain payment of a claim for money or recovery of property, shall not prevent the money or property from being presumed abandoned property, nor affect any duty to file a report required by this act or to

pay or deliver abandoned property to the State Treasurer.

When Utah adopted the Uniform Act, it deleted section 16. In *State ex rel. Baker v. Intermountain Farmers Association,* 668 P.2d 503 (Utah 1983), we stated that the legislative history of the Act suggested that section 16 was omitted to avoid doubts as to its constitutionality when applied to claims already barred by the statute of limitations when the Act took effect. We noted that the commissioners' notes which accompanied the Uniform Act cautioned that section 16 may need to be modified or eliminated before enactment in states whose constitutions have been interpreted to recognize a vested right in one who has the defense of the statute of limitations. The commissioners' notes suggest indirectly that Utah may be one of these states, based upon our decisions in *Ireland v. Mackintosh,* 22 Utah 296, 61 P. 901 (1900), and *In re Swan's Estate,* 95 Utah 408, 79 P.2d 999 (1938). These cases hold that a claim barred by the statute of limitations cannot be revived by subsequent legislative action. The plaintiff in the instant action also cites the following additional cases to the same effect. *McGuire v. University of Utah Medical Center,* 603 P.2d 786 (Utah 1979); *Del Monte Corp. v. Moore,* 580 P.2d 224 (Utah 1978). The commissioners' notes bear out Justice Traynor's observation in *Douglas Aircraft Co. v. Cranston, supra,* that the draftsmen of the Uniform Act believed and intended that section 16 would apply retroactively to claims already barred when the Act took effect.

Thus, it appears that Utah's purpose in omitting section 16 was simply to avoid a constitutional problem by leaving undisturbed vested rights of holders of property whose owners, at the time the Act took effect, were barred by statutes of limitations from claiming possession. No more significance should be given to the omission of section 16. However, in *State ex rel. Baker v. Intermountain Farmers Association, supra,* we also attributed to the omission of section 16 an intention on the part of the legislature that the running of a statute of limitations against the owner of

the property *after* the effective date of the Act would bar the State Treasurer from making any claim to that property. Thus, the holder of the property would be relieved from any duty to report and deliver the same to the Treasurer. Upon reanalysis, we believe this further conclusion cannot stand.

The Uniform Act was approved in 1954 by the National Conference on Uniform State Laws and the American Bar Association. However, for many years prior thereto, it had generally been held that the running of a statute of limitations was of no consequence to the right of the state to the unclaimed property. 30A C.J.S. *Escheat* §§ 3, 11; *Commonwealth v. Cunningham*, 337 Pa. 289, 10 A.2d 559 (1940); *In re Lamberton's Estate*, 352 Pa. 531, 43 A.2d 94 (1945). The Uniform Act did not attempt to change that rule, for without it, the effectiveness of any unclaimed property law would be greatly diminished. This was demonstrated by the Massachusetts Supreme Judicial Court in *Treasurer and Receiver General v. John Hancock Mutual Life Insurance Co.*, 388 Mass. 410, 446 N.E.2d 1376 (1983). In that case, the court was construing section 7(c) of the Massachusetts abandoned property act (not the Uniform Act but similar), providing:

> No person shall be required to report any property on a presumption of abandonment to the State Treasurer if the period of time provided by any statute of limitations applicable to the owner's rights as against a holder has expired unless the court orders him to do so.

The court interpreted section 7(c) as applying only to property for which the statute of limitations had expired as of the effective date of the act. It pointed out that if section 7(c) were given any broader application, the whole purpose of the Unclaimed Property Act would be defeated. Said the court:

> The Legislature could not have meant to allow statutes of limitations governing the various types of property defined as abandoned in [our abandoned property statutes] to determine randomly the scope of the abandoned property law.

Most typical statutes of limitations are shorter than the ten- or the fourteen-year dormancy periods in effect under the abandoned property and unclaimed funds laws. If John Hancock's argument were to prevail, no type of abandoned property subject to a typical statute of limitations could ever be collected by the Treasurer. Thus, John Hancock's construction of the statute would render the statute difficult, if not impossible, to enforce. It also would create a situation in which the purposes of the abandoned property act, to reunite the property with its owners and to employ the property for public purposes in the interim, could not be achieved. "An intention to enact a barren and ineffective provision is not lightly to be imputed to the legislature." *Insurance Rating Bd. v. Commissioner of Ins.*, 356 Mass. 184, 189 [248 N.E.2d 500] (1969). Therefore, we read § 7(c) as applying only to that property for which the statute of limitations had expired as of the effective date of [the act].

The court in holding that the purpose of section 7(c) was to relieve holders from the retroactive reporting of abandoned property stated: "In this way, no person or entity who had relied on the use of funds after expiration of a statute of limitations and before passage of [the abandoned property law] would be disadvantaged." The court then noted that section 7(c) had been repealed in 1975 (some twenty-five years after its enactment), because it had become an anachronism by then.

We believe that the reasoning of the Massachusetts court is sound. Our Act, like the Massachusetts act, provides that unclaimed property becomes presumably abandoned after the elapse of from seven to fifteen years, depending on the type of property involved. In most cases, it would appear that our period of limitations is shorter, ranging from one to six years. It seems reasonable that the legislature intended that even though the owner was barred by the statute of limitations from recovering his property from the holder, the property should be delivered to the

State Treasurer to be sold and the proceeds deposited in the Uniform School Fund. § 78–44–17. To bar the State from taking custody of the property after the statute of limitations had run against the owner, would be to frustrate the public purposes of the Act. The property would remain in the hands of the holder and allow him and not the public to benefit therefrom. Such a construction would also destroy the vitality of section 78–44–18, which allows an owner to file a claim thereafter with the Treasurer for the property or the proceeds of its sale, and "no statute of limitations shall bar the filing of a claim."

We observed in *State ex rel. Baker v. Intermountain Farmers Association* that the rights of the State are derivative from the rights of the owners of the abandoned property. That statement is true as to the substance of the State's claim. *See, e.g., Allstate Insurance Co. v. Eagerton*, 403 So.2d 172 (Ala.1981). However, procedural requirements, such as the statute of limitations, should not bar the State. In *Sennett v. Insurance Company of North America*, 432 Pa. 525, 247 A.2d 774 (1968), the defendant insurance company argued that the commonwealth's right to custody of the abandoned property was derivative from that of the owners, and hence the commonwealth's rights could rise no higher than the individual claimant's right, which was barred by a six-year statute of limitations. The court dismissed that contention in the following language:

> The effect of INA's argument would be to preclude the Commonwealth entirely with regard to matters involving a private six-year statute of limitations because the Commonwealth's right to bring escheat proceedings only arises seven years after the claimant's right ripens. *We cannot adopt such an absurd result* .... While the Commonwealth's claim as to the substantive merits of its position may very well be derivative, the procedural requirements of a statute of limitations which apply to the claimant, nevertheless do not prevent the Commonwealth from enforcing its separate and distinct right to bring escheat proceed-

ings. Only a specific statutory limitation can operate as a bar against the Commonwealth.

(Emphasis added.)

In retrospect, we fell into error in *State ex rel. Baker v. Intermountain Farmers Association, supra,* and we now overrule that case insofar as it is inconsistent with the result reached here today. In holding in that case that the State Treasurer was barred by the statute of limitations from taking into custody unclaimed patronage credits, we relied principally on *Pacific Northwest Bell Telephone Co. v. Department of Revenue,* 78 Wash.2d 961, 481 P.2d 556 (1971), because Washington in adopting the Uniform Act had also deleted section 16. The opinion in the Washington case was delivered by a divided court (five to three) and has been recently criticized by some of the present members of that court in *State, Department of Revenue v. Puget Sound Power & Light Co.,* 103 Wash.2d 501, 694 P.2d 7 (1985). The criticism was that the decision in *Pacific Northwest Bell Telephone Co. v. Department of Revenue* virtually annulled the Unclaimed Property Act, because property would seldom be deemed abandoned until after the statute of limitations had run against the owner. Moreover, in 1979 the Washington legislature enacted a statute substantially the same as section 16 of the Uniform Act providing that the running of the statute of limitations against the owner would not bar the state's right to custody of the unclaimed property. Thus, the incongruous result reached in *Bell* is no longer the law in Washington.

The judgment below is reversed, and the case is remanded to the trial court with directions to enter judgment in favor of the defendants on their motion for summary judgment. No costs on appeal awarded.

HALL, C.J., and DURHAM, STEWART and ZIMMERMAN, JJ., concur.