**DIVISION OF UNCLAIMED PROPERTY, and Michael Earl, Acting Administrator of the Division of Unclaimed Property, Plaintiffs and Appellees,**

v.

**McKAY DEE CREDIT UNION, Defendant and Appellant.**

No. 970157.

Supreme Court of Utah.

May 12, 1998

---

Jan Graham, Att'y Gen., Ralph L. Finlayson, Asst. Att'y Gen., Salt Lake City, for Plaintiffs and Appellees.

Bruce L. Richards, Dean A. Stewart, Salt Lake City, for Defendant and Appellant.

RUSSON, Justice:

McKay Dee Credit Union appeals from the district court's grant of summary judgment in favor of the Division of Unclaimed Property, a division of the Utah State Treasurer's office. The trial court ordered the credit union to remit the total amount of seven unclaimed checks, plus interest, to the State pursuant to the Uniform Unclaimed Property Act. We affirm.

## BACKGROUND

The Uniform Unclaimed Property Act ("Unclaimed Property Act" or "Act") governs the disposition of unclaimed or abandoned property.[1] The Act requires a holder of unclaimed intangible property to remit the property to the State if no one claims it within five years. The State must then attempt to locate the owners and restore the property to them. *See Travelers Express Co. v. State*, 732 P.2d 121, 122 (Utah 1987). Until the property is claimed, however, the State is allowed to put it to use. *See id.* Without such a statute, the holder would receive a windfall merely because it was in possession of the property. *See id.*

The Division of Unclaimed Property is responsible for executing and enforcing the provisions of the Act. It is specifically given the authority to investigate potential holders of unclaimed property to ensure compliance with the Act. Utah Code Ann. § 78–44–31 (1992).

Commencing February 21, 1995, the State audited McKay Dee Credit Union ("McKay Dee")[2] to determine whether McKay Dee possessed unclaimed property. The State asserted that forty-one checks totaling $3,522.33 were unclaimed property and demanded that McKay Dee remit that amount plus interest to the State.

In response, McKay Dee submitted documentation on nineteen of the forty-one checks, refuting the State's assertion that they were unclaimed, remitted $459.42, representing fifteen checks it conceded were unclaimed, and refused payment on the remaining seven checks, totaling $1,100.45. McKay Dee asserted that the seven checks

---

1. In 1983, Utah adopted the Uniform Unclaimed Property Act, codified at chapter 44 of title 70. 1995 Utah Laws chapter 198 repealed sections 78–44–1 to –40 and enacted the UnclaimedProperty Act, codified at Utah Code Ann. §§ 67–4a–101 to –902. We refer to the statute as it was in effect at the relevant time.

2. McKay Dee is a Utah chartered credit union with its principal place of business in Ogden, Utah.

at issue were more than seven years old and were therefore beyond the records retention requirement of rule 337–9–3 of the Utah Administrative Code ("rule 337").

The State accepted McKay Dee's documentation concerning the nineteen checks and the payment for the other fifteen checks. It maintained, however, that the seven remaining checks were unclaimed property and demanded remittance and all after-accrued interest. After unsuccessful negotiations, the State filed the complaint commencing this action for $1,100.45, plus interest, on January 31, 1996.

McKay Dee moved for summary judgment, arguing that the State's claim was barred by the statute of limitations and, in any case, that the State was not entitled to the funds because it had not established that the checks had been abandoned. It also argued that the State's claim was precluded because McKay Dee had disposed of the records relating to those checks as allowed by rule 337 and section 7–1–301(7) of the Utah Financial Institutions Act,[3] which allows financial institutions to dispose of their records after seven years without incurring liability. Furthermore, McKay Dee requested attorney fees pursuant to Utah Code Ann. § 78–27a–4 (1992).

The State filed a cross-motion for summary judgment along with a memorandum in opposition to McKay Dee's motion. It claimed that the statute of limitations had not run, that the State had proven that the checks had been abandoned by establishing the statutory presumption of abandonment set forth in the Unclaimed Property Act, and that McKay Dee had not rebutted that presumption. The State also argued that compliance with the Financial Institutions Act is not an affirmative defense to the Unclaimed Property Act, that McKay Dee was required to remit to the State the funds in question, and that McKay Dee's request for attorney fees should be denied.

The trial court denied McKay Dee's motion for summary judgment and its request for attorney fees and instead granted summary judgment in favor of the State, holding that the State had established the statutory presumption of abandonment and that McKay Dee had not presented any evidence to rebut that presumption. Furthermore, the trial court ruled that the Financial Institutions Act and the Unclaimed Property Act were not in conflict and that the Unclaimed Property Act is not limited by the Financial Institutions Act.

On appeal, McKay Dee argues that the trial court erred in ruling for the State inasmuch as no evidence was available to support the State's claim of abandoned property, or even to establish a presumption of abandonment as allowed by the statute, because the records had been destroyed as allowed by rule 337 and the Financial Institutions Act, Utah Code Ann. § 7–1–301(7). McKay Dee claims that the State cannot require it to produce records more than seven years old because the Financial Institutions Act precludes liability for destruction of such financial records. Moreover, McKay Dee argues that the two acts are in conflict and that the Financial Institutions Act, which specifically applies to credit unions, supersedes the Unclaimed Property Act.

In response, the State asserts the following three arguments: (1) The State established that the checks were abandoned property, as it met the statutory requirements of a presumption of abandonment by placing into evidence McKay Dee's ledger entries of checks being held by McKay Dee that were payable to someone other than McKay Dee and had remained unclaimed for more than five years; (2) McKay Dee did not offer any evidence to rebut that presumption; and (3) there is no conflict between the Financial Institutions Act and the Unclaimed Property Act because the Financial Institutions Act does not require the holder to destroy the records of the property but rather merely allows for such disposition. Moreover, the State argues, the Unclaimed Property Act does not require a holder of unclaimed property to produce records legally disposed of pursuant to rule 337 but merely allows the holder to rebut a presumption of abandonment by presenting any evidence it may

---

**3.** The Utah Financial Institutions Act is codified at Utah Code Ann. §§ 7–1–101 to –808 (1995).

choose to show that the property was not abandoned.

## STANDARD OF REVIEW

By definition, a grant of summary judgment is based upon conclusions of law; therefore, we review the trial court's decision for correctness without deference. *See Berenda v. Langford,* 914 P.2d 45, 50 (Utah 1996).

## ANALYSIS

 The first issue this court must resolve is whether the State established that the seven checks in question were abandoned property under the Unclaimed Property Act. The Act provides as follows:

[A]ll intangible property ... that is held, issued or owing in the ordinary course of a holder's business and has remained unclaimed by the owner for more than five years after it became payable or distributable is presumed abandoned.

Utah Code Ann. § 78–44–3(1) (1992). Once the property has been presumed abandoned, the holder must report and remit the property to the State.[4] Utah Code Ann. §§ 78–44–18 & –20. If the holder fails to comply with the Act, the State is authorized to enforce the statute "in a court of competent jurisdiction." *Id.* § 78–44–33. However, if the State attempts to enforce the Act in court, it has the burden of establishing that the property was abandoned. *See Deseret Pharmaceutical Co. v. State Tax Comm'n,* 579 P.2d 1322, 1326 (Utah 1978) (stating that party seeking application of statute has burden of proof).

In the case at bar, the State's auditor indicated in an affidavit that the seven checks at issue were documented in the form of McKay Dee ledger entries which listed the checks by check number, date of issuance, and amount. While the payees of the checks could not be identified, the ledgers showed that the most recent checks were dated 1987, seven years before the 1995 audit.[5] After identifying four of the seven checks in 1982 and 1983 ledgers, the auditor concluded:

[These checks] are highly likely to represent unclaimed property because a) they were described in the Credit Union's records as outstanding bank items, b) the checks were not cleared through routine payment by the holder's bank but were added to the account's bank balance and the offsetting entry was subtracted from a Credit Union expense account and c) the Credit Union had a reporting history dating back to 1974 and had never reported this type of property, and it would be very unusual for any financial institution doing the type of business Defendant does not to have some checks reportable in this period of time.

The auditor further identified three other checks written against McKay Dee's checking account for 1987 that were still outstanding when McKay Dee closed the account in 1989. The auditor concluded that these three checks were also "highly likely" to represent unclaimed property because

a) at the time the account was closed the checks had been outstanding for at least 15 months, b) McKay–Dee was unable to show [the auditor] notations indicating that the checks were reissued or redeposited to a member account, or represented an accounting error, and c) [the auditor's] experience from other audits teaches that stale dated checks are not usually reissued after checking accounts are closed.

---

4. A check is "intangible property" under the Act. Utah Code Ann. § 78–44–2(10)(a). The Act defines "holder" as "a person, wherever organized or domiciled, who is[ ] (a) in possession of property belonging to another; (b) a trustee; or (c) indebted to another on an obligation." *Id.* § 78–44–2(8). In contrast, "owner" is defined as

a depositor in the case of a deposit, a beneficiary in case of a trust other than a deposit in trust, a creditor, claimant, or payee in the case of other intangible property, or a person hav-

ing a legal or equitable interest in property subject to this chapter or the legal representative of such person.
*Id.* § 78–44–2(12).

5. The payees of the seven checks were not recorded in the ledgers. McKay Dee claims that it destroys any information indicating the payees' identities as allowed by the Financial Institutions Act when such records are more than seven years old. Utah Code Ann. § 7–1–301(7) (1995).

McKay Dee argues on appeal that there are "myriad" possible scenarios in which McKay Dee could have been the "owner" of the checks, in which case the property could not be considered unclaimed. McKay Dee further argues that there was insufficient evidence to support a presumption of abandonment. We disagree.

■ The Act does not require the State to rebut every possible scenario that favors McKay Dee's position. To the contrary, it merely requires the State to meet the statutory presumption of abandonment. The State's evidence indicated that McKay Dee was the holder, not the payee, of the seven checks because reason dictates that McKay Dee would not issue checks to itself as payee and then not cash the checks but instead hold them on its books as outstanding items for more than five years. Moreover, the auditor's affidavit regarding the manner in which McKay Dee balanced its accounts with respect to the seven checks further indicates that McKay Dee was the holder, not the owner, of the checks. Finally, the State's evidence indicated that all seven checks had remained unclaimed by their owners for more than five years after they became payable or distributable. Therefore, the State met its burden that the checks at issue were presumed abandoned, and the trial court was correct in so holding.

■ The next issue is whether McKay Dee rebutted the presumption that the checks were abandoned. To do so, McKay Dee had to produce evidence that it was the owner of the checks in question or, if it was merely the holder, that the checks had not remained unclaimed for the statutory period. McKay Dee's assertion that there were "myriad" possibilities that it was the owner is not sufficient. Because McKay Dee failed to produce any evidence to support its position, the trial court correctly found that McKay Dee had failed to rebut the presumption of abandonment.

However, before the State was entitled to take custody of the abandoned property, the State had to show that it, not another state,

was entitled to hold the unclaimed property by meeting one of the conditions listed in section 78–44–4. The State argues that it has met the conditions set forth in section 78–44–4(3), which requires that "the records of the holder do not reflect the last known address of the apparent owner, and it is established that[ ] (a) [t]he last known address of the person entitled to the property is in this state; *or* (b) *the holder is a domiciliary.*" Utah Code Ann. § 78–44–4(3) (emphasis added). Because it is undisputed that McKay Dee is a domiciliary of Utah, the State has also satisfied the statutory requirements of section 78–44–4.

■ Finally, McKay Dee argues that even if the State has established the presumption of abandonment, McKay Dee cannot be required to produce documents to rebut the presumption since such records were over seven years old and had been destroyed as allowed by the Financial Institutions Act. The Financial Institutions Act provides, "If an institution disposes of a record after the prescribed period, the institution has no duty to produce it in any action or proceeding and is not liable to any person by reason of that disposition." Utah Code Ann. § 7–1–301(7) (1995).[6] Thus, McKay Dee argues that it cannot be held liable for not producing documents which are at least seven years old and that the Unclaimed Property Act would conflict with the Financial Institutions Act were McKay Dee to be held liable for not producing such records in order to rebut the presumption of abandonment.

Where we are presented with two potentially conflicting statutes, we have a responsibility to construe them to be in harmony if reasonably possible. *See De Baritault v. Salt Lake City Corp.*, 913 P.2d 743, 747 (Utah 1996) (reasoning that " '[w]hen a construction of an act will bring it into serious conflict with another act, our duty is to construe the acts to be in harmony and avoid conflicts' " (quoting *Jerz v. Salt Lake County*, 822 P.2d 770, 773 (Utah 1991))). While there is tension between the two statutes, they are not in conflict. In this instance, the Un-

---

6. Rule 337 establishes that the period after which a financial institution may destroy its rec- ords is seven years. Utah Admin. Code R337–9–3.

claimed Property Act does not require McKay Dee to produce legally destroyed records. Instead, it allows McKay Dee an opportunity to rebut a presumption that certain property is abandoned. How that presumption is rebutted is left up to McKay Dee.

■ We must point out, however, that McKay Dee was required by the Unclaimed Property Act to report and remit all property unclaimed for a period of five years. McKay Dee did not comply with the requirements of the Act. Since the Financial Institutions Act allows for the disposal of records after seven years and McKay Dee disposed of the records regarding the checks without reporting such information to the State as required after five years, McKay Dee destroyed the records at the risk of needing such documents to later rebut a presumption of abandonment in this instance. While the Financial Institutions Act does not allow a holder to be held liable for actual destruction of financial records, it does not create a defense to any and all causes of action against the holder, including this one brought under the Unclaimed Property Act.

At any rate, the Unclaimed Property Act's requirement that the unclaimed property be remitted if the presumption is not rebutted does not impose liability for the destruction of the records; therefore, the Act does not conflict with the Financial Institutions Act. Furthermore, the forfeiture of property to which the holder has no right cannot be considered an instance of being held liable. *See State v. One Hundred Seventy–Five Thousand Eight Hundred Dollars, United States Currency*, 942 P.2d 343, 350 (Utah 1997) ("Taking away that to which one has no right is not punishment."). The very nature of the presumption of abandonment indicates that the holder is not the rightful owner of the property. However, if the holder does have a valid claim on the property, it must present some evidence to support that claim regardless of whether that entails preserving some records it was legally permitted to destroy. Thus, Utah Code Ann. § 7–1–301(7) is not violated because McKay Dee is not being *compelled* to produce legally disposed of records and is therefore not being held "liable to any person by reason of [its]

disposition" of the records concerning the seven checks in question.

Moreover, allowing McKay Dee to escape the rebuttal requirements by reason of its disposal of the records would create a private escheat and frustrate the purposes of the Unclaimed Property Act. *See Travelers Express*, 732 P.2d at 122 (" 'The objectives of the act are to protect unknown owners by locating them and restoring their property to them and to give the state rather than the holders of unclaimed property the *benefit of the use of it* . . . .' " (emphasis added) (quoting *Douglas Aircraft Co. v. Cranston*, 58 Cal.2d 462, 24 Cal.Rptr. 851, 374 P.2d 819, 821 (1962))). Although the Unclaimed Property Act required McKay Dee to report and remit all property unclaimed for a period of five years, McKay Dee did not remit or report any of the checks, including those it later conceded were unclaimed. Upon being audited, McKay Dee refused to remit the amount of the checks that were at least seven years old simply because they were "[b]eyond Records Retention Limitations." We cannot accept McKay Dee's argument that in spite of its failure to remit or report the unclaimed property in its possession after the five-year period required by law, it is immune from having to rebut a presumption of abandonment because of the Financial Institutions Act. Such a construction of the law would frustrate the purpose of the Unclaimed Property Act.

In *Travelers Express*, this court considered whether the running of the statute of limitations on the *owner's* right to claim the property at issue prohibited the *State* from enforcing payment under the Unclaimed Property Act. In holding that the statutes of limitations did not defeat the requirement that the holder of unclaimed property remit such property to the State, we stated:

> To bar the State from taking custody of the property after the statute of limitations had run against the owner[ ] *would be to frustrate the public purposes of the Act. The property would remain in the hands of the holder and allow him and not the public to benefit therefrom.*

*Travelers Express*, 732 P.2d at 124 (emphasis added).

The same reasoning applies here. If we were to construe the Financial Institutions Act as defeating the State's derivative right to the unclaimed property, we would frustrate the objectives of the Unclaimed Property Act. A financial institution could ensure a windfall by simply neglecting to report or remit unclaimed property until after the record retention requirement had lapsed, at which point it could assert the Financial Institutions Act as an affirmative defense to the State's statutory claim on the property. We refuse to create such an incentive for financial institutions.

In conclusion, we hold that the trial court was correct in granting the State's motion for summary judgment in that a presumption of abandonment of the checks was established pursuant to the Unclaimed Property Act and McKay Dee did not rebut that presumption. We further hold that the Unclaimed Property Act and the Financial Institutions Act are not in conflict and that the destruction of seven-year-old records cannot be used as an excuse for failure to comply with the requirements of the Unclaimed Property Act or failure to rebut a presumption of abandonment at trial. We therefore affirm.

HOWE, C.J., DURHAM, Associate C.J., and STEWART and ZIMMERMAN, JJ., concur in Justice RUSSON's opinion.